Heather M. Lopez (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: 865-247-0080
Email: hlopez@milberg.com

Scott Edelsberg (SBN: 330090)
**EDELSBERG LAW, P.A.**
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| **QUI NGUYEN**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**KLAVIYO, Inc.**, a Delaware corporation,<br><br>*Defendant.* | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violation of Cal. Penal Code § 631;**<br><br>2. **Violation of Cal. Penal Code § 635; and**<br><br>3. **Violation of Cal. Penal Code § 638**, *et seq*.<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Qui Nguyen brings this Class Action Complaint and Demand for Jury Trial against Klaviyo, Inc. for surreptitiously collecting California consumers' web browsing activities. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Defendant Klaviyo develops and sells "powerful web tracking" software that collects consumer browsing and purchasing activity from e-commerce stores, including website specializing

1
**CLASS ACTION COMPLAINT**

in healthcare-related purchases.

2.     Hundreds of thousands of businesses, such as the portfolio of brands under the "Authentic Brands Group" and many others, have embedded Klaviyo's tracking software into their e-commerce websites, thereby giving Klaviyo access to billions of transactions.

3.     Klaviyo collects consumers' detailed browsing and purchasing activities across the internet. Klaviyo collects the name of the product the consumer is browsing, the URL associated with the product page, the URL associated with an image of the product, the product's price, and even search terms the consumer enters on the website.

4.     Once Klaviyo collects a treasure trove of consumer interest and spending data, it engaged in further data matching by using its identity resolution product whereby Klaviyo creates "360° customer profiles that [go] way beyond contact info."

5.     Indeed, Klaviyo profiles show "every action a customer takes, as it happens: what they're eyeing, buying, clicking, and far more." Klaviyo creates a consumer profile from various sources and devices used by the consumer.

6.     Defendant Klaviyo also developed its own artificial intelligence and machine learning model product called Klaviyo AI, which analyzes consumer spending data to make various predictions about the consumer such as their next purchase, churn risk, and even their gender.

7.     Worst of all, consumers visiting an e-commerce web store are never informed that an unknown third-party is collecting their browsing and purchasing activity data in real-time. Consumers never gave Klaviyo or anyone else consent to have their web browsing activities monitored and analyzed. As such, Defendant violated Cal. Penal Code § 631.

**PARTIES**

8.     Plaintiff Qui Nguyen is a resident of San Jose, California.

9.     Defendant Klaviyo, Inc. is a Delaware corporation with its principal place of business located at 125 Summer Street, Floor 6, Boston, Massachusetts 02111. Defendant maintains offices in this District located at 181 Fremont Street, Floor 21, San Francisco, California 94105.

2
**CLASS ACTION COMPLAINT**

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

11. This Court has personal jurisdiction over Defendant because Defendant conducts business in this District, has offices in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, in a substantial part, in the District.

## DIVISIONAL ASSIGNMENT

13. Pursuant to Civil Local Rule 3-2(e), this case should be assigned to the San Jose Division because Plaintiff resides in this District and a substantial part of the events or omission giving rise to the claim occurred within the county of Santa Clara.

## COMMON FACTUAL ALLEGATIONS

***Klaviyo Collects Consumer Web Activities***

14. Klaviyo is a software company that captures, stores, and analyzes consumer browsing and purchasing activities. Klaviyo develops and sells "powerful web tracking" software that collects consumer activity data from over 160,000 e-commerce brands and websites.

15. Klaviyo surreptitiously collects information on the products consumers are browsing and purchasing in real time. Klaviyo collects a consumer's website activity information such as the product name, product price, product category, URL corresponding with the product image, and the descriptive web page URL. The descriptive URLs reveal product names and other product information. Klaviyo also collects the search terms that a consumer inputs into the search bar on a website (collectively, "Consumer Web Activity").

16. Indeed, Klaviyo designed its software to collect, in real time, the contents of

3
**CLASS ACTION COMPLAINT**

communications between the consumer and an e-commerce store. Consumers navigating to a URL, viewing a product, or entering text into a form intend to send messages to, or otherwise communicate with, the website.

17. For example, Klaviyo intercepts the exact words and phrases that consumers type into the search bar at www.everymanjack.com. As demonstrated in the image below, the user typed the

```
"properties": {
    "q": "specialperfume",
    "initial_page_path": "/search",
    "page": "https://www.everymanjack.com/search?q=specialperfume",
    "browser": "Firefox",
    "os": "Mac",
    "$use_ip": true,
    "$is_session_activity": true
```

*Figure 1.*

phrase "specialperfume," and that exact phrase was intercepted by Klaviyo.

18. Similarly, a website returning search results featuring products or generating a web page intends to communicate with the consumer in response to his or her request. Klaviyo collects, in real time, the messages/communications intended for the website.

19. The purpose of collecting Consumer Web Activity is simple: to allow Klaviyo to send consumers marketing emails and text messages. Klaviyo's promotional messages entice consumers to make a purchase based on the products they previously browsed and/or purchased.

20. The problem with Klaviyo is that consumers do not know that by interacting with a website which has embedded Klaviyo's software that their Consumer Web Activity is being surreptitiously siphoned off by an unknown third party. Consumers are never informed about Klaviyo being embedded into the website; they never consent to Klaviyo's data collection practices, nor are they allowed to opt-in or opt-out of Klaviyo's data collection practices.

21. A consumer would never know whether any given website has Klaviyo's tracking

software embedded. The entire data collection process takes place surreptitiously without the consumer's knowledge or consent.

22. The information Defendant Klaviyo collects reveals information about the consumer's interests, the websites they visit, shopping histories, and insight into their spending habits.

***Klaviyo Creates a Digital Dossier on Consumers***

23. Klaviyo admits it creates comprehensive profiles on consumers. Klaviyo touts that its

customer profiles show "[e]verything to know about your customers, in one place" and explains that "customer profiles consolidate data across your stack for a complete picture of each customer: who they are, what they like, and when and how they're engaging with you. All this customer profile data is for building segments and personalizing content." *See* Figure 2.

24. As shown above and below, Klaviyo customer profiles contain a consumers' purchase activity (*e.g.,* the order they placed and the products they ordered) and their web activity (*e.g.,* the products they viewed, items they added to cart, forms they completed, and site searches they performed).

*Figure 2.*

> # Everything to know about your customers, in one place
>
> With Klaviyo's 350+ integrations, customer profiles consolidate data across your stack for a complete picture of each customer: who they are, what they like, and when and how they're engaging with you.
> All this customer profile data is for building segments and personalizing content, including:
>
> - **Purchase activity:** orders placed and fulfilled, products ordered, loyalty points, and more
>
> - **Web activity:** visits, product views, add to carts, site searches, review submissions
>
> - **Channel consent & engagement:** email, SMS, push, reviews, ads
>
> - **Coupons:** active, expired, redeemed
>
> - **Custom properties:** interests, sizes, questionnaire responses
>
> - **Predictive analytics:** CLV, churn risk, time between orders, next order date

*Figure 3.*

25.     Klaviyo ensures that collected Consumer Web Activity does not remain anonymous. Klaviyo collects text consumers enter into website forms such as their names, email addresses, phone numbers, and other identifiers, making it easy to track consumers across devices. For example, Klaviyo collects names, email addresses, and phone numbers when a consumer makes a purchase, signs up for an email newsletter, or provides contact information to redeem a promotional offer.

6
**CLASS ACTION COMPLAINT**



*Figure 4.*

26.     The process of collecting and correlating consumer data into one profile is called identity resolution. Klaviyo describes the process as such:

> Identity resolution refers to the process of maintaining a unified customer record, regardless of the various identifiers (e.g. email, phone number, etc.) used across different touchpoints or devices. This results in a singular, comprehensive profile for each individual person, irrespective of the channels they interact through.

27.     Klaviyo also utilizes a feature called "anonymous visitor activity backfill" that allows it to correlate previously anonymous Consumer Web Activity with an identified consumer. Klaviyo explains: "[w]ith Klaviyo's anonymous visitor activity backfill, you can capture onsite activity for a shopper prior to identification. Once that visitor is identified in the future, you'll have access to their historical onsite events....To collect onsite data for anonymous visitors, Klaviyo records data about a visitors [sic] actions as they occur and stores that locally in their browser. In the future when that visitor is identified, that data is then sent to Klaviyo and cleared from the browser. Any future onsite

activity will be tracked as usual through the Klaviyo cookie once they have been identified as well."

28. Equipped with this wealth of knowledge about the Consumers' Web Activities, Klaviyo places consumers into segments and applies its artificial intelligence algorithms to make various predictions about the consumers' future spending. For example, the Klaviyo AI can predict a consumers' lifetime value, next purchase date, churn risk, and even gender.

29. Furthermore, Klaviyo creates segments and groups "consumer profiles into precise audiences that update in real-time as consumers interact with our customers."

*Klaviyo Uses Consumer Data for Its Own Purposes*

30. The terms of use that govern the relationship between Klaviyo and its e-commerce business partners specifically allow Klaviyo to use consumer data to improve it products and services and develop entirely new products:

> Klaviyo may collect and derive from Customer Data aggregated data that does not identify Customer, any third-party entity or any natural persons, and use and disclose such aggregated data for Klaviyo's legitimate business purposes, which may include but is not limited to **Services improvement, service and product development, research and marketing.** (emphasis added)

31. Indeed, Klaviyo's SEC investor filings confirm that Klaviyo plans to increase the number of customers using its platform so that it can use the data to refine its products:

> Our platform and customers benefit from significant network effects. As of June 30, 2023, we assembled over 6.9 billion consumer profiles across our customer base, and in the twelve month period ended June 30, 2023, we processed over 695 billion events, which are data on how consumers engage across channels, such as opening an email, browsing a website, or placing an order. **As we add more customers and more anonymized data on our platform, we are able to better refine our predictive models of consumer behavior.**[1] (emphasis added)

32. One feature, among many, Klaviyo has created from collected Consumer Web Activity is the ability for its business customers to leverage Klaviyo's data and compare their e-

---

[1] https://www.sec.gov/Archives/edgar/data/1835830/000162828023032570/klaviyoincfinalprospectus.htm

8
**CLASS ACTION COMPLAINT**

commerce store's performance with that of other stores within the same industry. For instance, Klaviyo shows businesses their store's average cart size, order count, and order value and how it compares to other businesses in the same industry. Klaviyo can also show business the rate of consumers signing up for their marketing campaigns compared to other businesses in the same industry. As such, has built a benchmark tool using Consumer Web Activity and has sold access to the tool to businesses using Klaviyo.

**FACTS SPECIFIC TO PLAINTIFF**

33. Plaintiff Nguyen visited everymanjack.com and used the website to communicate his personally identifiable information.

34. Plaintiff Nguyen was not aware that Klaviyo's Tracking Tools were embedded on the website when he communicated his information and made a purchase because, amongst other things, the Tracking Tools are invisible to ordinary users.

35. While Plaintiff Nguyen used the website, Klaviyo collected his Consumer Browsing Activity which included the URLs, names, and prices of the products he viewed and purchased along with any text he typed into the website's search bar.

36. Klaviyo also collected Nguyen's contact information when placing an order.

37. Klaviyo touts the use of its artificial intelligence on Consumer Browsing Activity obtained from consumers visiting the website Plaintiff Nguyen visited.

38. Plaintiff Nguyen did not know, nor had reason to know, that an unknown third party, Klaviyo, surreptitiously collected his Consumer Web Activity and created a profile on his likes, interest, and purchases.

39. Plaintiff did not give Klaviyo consent to collect his Consumer Web Activity or any information about him whatsoever.

**CLASS ACTION ALLEGATIONS**

40. **Class Definition**: Plaintiff Qui Nguyem brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of others similarly situated, defined as follows:

All California residents who visited a website with Klaviyo's software embedded.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

41. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has surreptitiously collected and analyzed Consumer Web Activities from consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   A. Whether Defendant read, attempted to read, or learned the content of the communications made by Plaintiff and the Class;

   B. Whether Defendant's actions were willful;

   C. Whether Defendant had the capability to and/or used Plaintiff's and the Class's communications for its own purposes, and

   D. Whether Defendant obtained consent from Plaintiff and the Class.

43. **Typicality**: Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendant's misconduct at issue.

44. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation

and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

45. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

46. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## COUNT I
### Violation of Cal. Penal Code § 631
### (On behalf of Plaintiff and the Class)

47. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of the members of the putative class.

49. To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

50. Defendant's software is a "machine, instrument, contrivance..." used to collect Consumer Web Activity.

51. Defendant read, attempted to read, or otherwise learned the content of the communications between the Plaintiff and the Class and e-commerce stores.

52. Consumer Web Activity includes the names of products Plaintiff and the Class viewed and/or purchased, the URLs associated with the product which describe the product by name, and search terms the consumer made. As such Consumer Web Activity is "content" under CIPA.

53. Plaintiff's and the Class member's contact information such as their names, emails, and phone numbers they entered on a website form is also "content" under CIPA.

54. Furthermore, Defendant read, attempted to read, and/or learned the contents of communications sent from or received within the State of California in real time. Plaintiff and the Class intended their communications to be between them and the business website and not an unknown third party.

55. Defendant did not act as a mere extension of the website visited by Plaintiff and the Class because it used the communications for its own purposes. Defendant used or (in the alternative) has the capability to use Consumer Web Activity to develop and/or improve its own products and services. Indeed, Defendant developed products and services derived from Plaintiff's and the Class

members' Consumer Web Activity.

56. Defendant never obtained any consent whatsoever from Plaintiff and the Class.

57. Plaintiff and the Class seek an injunction and statutory damages in the amount of $5,000 per violation pursuant to Cal. Pen. Code § 637.2.

**COUNT II**
**Violation Of the California Invasion Of Privacy Act,**
**Cal. Penal Code § 635**
**(On behalf of Plaintiff and the Class)**

58. Plaintiff incorporates the foregoing allegations as if set fourth fully herein.

59. Plaintiff brings this claim individually and on behalf of the members of the putative class.

60. California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars ….

61. At all relevant times, by implementing Klaviyo's wiretaps, Klaviyo intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

62. Klaviyo's Tracking Tools constitute a "device" that is "primarily or exclusively designed" for eavesdropping. That is, they are designed to gather information about what URLs users visit, what they search for, the actions they undertake, and more.

63. Plaintiff and putative class and subclass members did not consent to any of Klaviyo's actions in implementing Klaviyo's wiretaps.

64. Pursuant to Cal. Penal Code § 637.2, Plaintiff and putative class and subclass members have been injured by the violations of Cal. Penal Code § 635, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**COUNT III**
**Violation of the California Invasion Of Privacy Act,**
**Cal. Penal Code § 638.50 & 638.51**
**(On behalf of Plaintiff and the Class)**

65. Plaintiff incorporates the foregoing allegations as if set fourth fully herein.

66. Plaintiff brings this claim individually and on behalf of the members of the putative class. CIPA § 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

67. A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of the communication." Cal. Penal Code § 638.50(b).

68. Separately, CIPA § 638.50(c) defines a "[t]rap and trace device" as a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."

69. CIPA § 638.51 prohibits a person from installing either a pen register or trap and trace device without a court order.

70. Klaviyo is a person under CIPA § 638.51.

71. Klaviyo implemented and installed its Tracking Tools—which are pen registers and/or trap and trace devices—on Plaintiff's and Class Members' devices and browsers.

72. These processes captured "routing, addressing, or signaling information" because they intercept and collect IP addresses, geolocation, device information, and other persistent identifiers from the websites they visited.

73. Klaviyo then used its Tracking Tools to build comprehensive user profiles, which were

used to unjustly enrich Klaviyo and its clients by linking and enhancing Plaintiff's and Class Members' data via its identity resolution services and other tools.

74. Plaintiff and Class Members did not provide their consent to Klaviyo's installation or use of the Tracking Tools.

75. Klaviyo did not obtain a court order to install or use any of their Tracking Tools.

76. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Klaviyo's violations of CIPA § 638.51(a), and each seek statutory damages of $5,000 for each of Klaviyo's violations of CIPA § 638.51(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Qui Nguyen individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Qui Nguyen as the representative of the Class, and appointing his counsel as Class Counsel;

(b) An order declaring that Defendant's actions, as set out above, violate Cal. Penal Code § 631(a), 635, 638.50, & 638.51;

(c) An injunction requiring Defendant to cease all unlawful activities;

(d) An award of statutory damages, disgorgement of profits, punitive damages, costs, and attorneys' fees; and

(e) Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**QUI NGUYEN,** individually and on behalf of all others similarly situated,

Dated: August 4, 2025

By: /s/ Heather Lopez
Heather M. Lopez (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: 865-247-0080
Email: hlopez@milberg.com

Scott Edelsberg (SBN: 330090)
**EDELSBERG LAW, P.A.**
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*