Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Vicki Chou, State Bar No. 248598
vchou@hueston.com
Deeksha Kohli, State Bar No. 333887
dkohli@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Defendant
KLAVIYO, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUI NGUYEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KLAVIYO, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-cv-06551-EKL<br><br>**DEFENDANT KLAVIYO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 14, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Eumi K. Lee<br>Courtroom: Courtroom 7<br>San Jose Courthouse<br>280 South First Street, 4th Floor<br>San Jose, CA 95113<br><br>Complaint Filed: August 4, 2025<br>Trial Date: None Set |

PLEASE TAKE NOTICE THAT on January 14, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Eumi K. Lee, United States District Judge, Northern District of California, located at San Jose Courthouse, 280 South First Street, Courtroom 7, 4th Floor, San Jose, California 95113, Defendant Klaviyo, Inc. ("Klaviyo") will, and hereby does, move for an order dismissing the claims of Plaintiff Nguyen's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Klaviyo moves to dismiss the action under Rule 12(b)(6) on the following grounds:

(1) Plaintiff's Complaint fails to state a claim upon which relief may be granted under Cal. Penal Code § 631(a).

(2) Plaintiff's Complaint fails to state a claim upon which relief may be granted under Cal. Penal Code § 635.

(3) Plaintiff's Complaint fails to state a claim upon which relief may be granted under Cal. Penal Code § 638.51.

(4) Plaintiff fails to state a claim for injunctive relief based on any of his claims.

The Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the concurrently filed Motion to Strike, Request for Judicial Notice and supporting documents, all pleadings and papers on file in this matter, and upon such argument and other matters as may be presented at the time of the hearing or otherwise.

The meet and confer requirement pursuant to Civil Standing Order VIII (A) has been satisfied.

Dated: September 29, 2025

HUESTON HENNIGAN LLP

By: [signature]

Vicki Chou
Moez M. Kaba
Deeksha Kohli
*Attorneys for Defendant*
*KLAVIYO, Inc.*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Klaviyo's Business ..... 3

B. Facts Alleged in Plaintiff's Complaint ..... 4

C. Judicially Noticeable Facts ..... 5

II. LEGAL STANDARD ..... 7

III. ARGUMENT ..... 9

A. Plaintiff's Complaint Fails to State a Claim Under CIPA § 631(a) ..... 9

1. Plaintiff Does Not Plausibly Allege a Lack of Consent to Collection of His Data ..... 9

2. Plaintiff Does Not Plausibly Allege that Klaviyo is a Third-Party Eavesdropper ..... 17

3. Plaintiff Does Not Plausibly Allege that Klaviyo Read or Attempted to Read or Learn the Contents of Plaintiff's Communications ..... 18

B. Plaintiff Does Not Have a Private Right of Action Under Cal. Penal Code § 635 Because Plaintiff's Complaint Fails to Allege Any Eavesdropping Under CIPA ..... 20

C. Plaintiff's Complaint Fails to State a Claim Under Cal. Penal Code § 638.51 Because it Does Not Plausibly Allege Lack of Plaintiff's Consent ..... 21

D. The Court Should Dismiss Plaintiff's Claims With Prejudice Because Contract Terms That Are Not Subject to Change Preclude Them ..... 23

E. Plaintiff Cannot Seek Injunctive Relief Because He Now Has Notice of Any Data Collection by Klaviyo ..... 24

IV. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 8

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) ... 23

*Garcia v. Enter. Holdings, Inc.,*
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ... passim

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ... 22

*Graf v. Zynga Game Network, Inc.*,
750 F.3d 1098 (9th Cir. 2014) ... 19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... passim

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ... 21

*Heiting v. athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. July 29, 2024) ... 19

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ... 2, 19, 20

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ... 8

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ... 9

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ... 10, 15

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ... 3, 24

*Kent v. Microsoft Corp.*,
2013 WL 3353875 (C.D. Cal. July 1, 2013) ... 22

TABLE OF AUTHORITIES (cont.)


Page(s)

*Khalid v. Microsoft Corp.*,
409 F. Supp. 3d 1023 (W.D. Wash. 2019) .......... 23

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 11, 13

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 22

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .......... 2, 17, 18

*Membrila v. Receivables Performance Mgmt.*,
2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) .......... 21

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 12, 13, 15

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 24

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 8, 22

*Montalti v. Catanzariti,*
191 Cal. App. 3d 96 (Ct. App. 1987) .......... 11

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 12, 14, 15

*Ramos v. Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. July 29, 2025) .......... 19

*Reilly v. Apple Inc.*,
578 F. Supp. 3d 1098 (N.D. Cal. 2022) .......... 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 17

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 17

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .......... 19

TABLE OF AUTHORITIES (cont.)

Page(s)

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ passim

*Slaten v. Dick's Sporting Goods, Inc.*,
2024 WL 1136399 (C.D. Cal. Feb. 2, 2024) ........ 12

*Snyder v. G6 Hosp. LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) ........ 10

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (Cal. 1978) ........ 8

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 17

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 2, 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 19

*Zamora v. Solar*,
2016 WL 3512439 (C.D. Cal. June 27, 2016) ........ 1, 23

Statutes

Cal. Penal Code § 637.2 ........ 20, 21

Cal. Penal Code § 629.51 ........ 22

Cal. Penal Code § 631(a) ........ passim

Cal. Penal Code § 635 ........ passim

Cal. Penal Code § 638.50 ........ 4, 9, 21

Cal. Penal Code § 638.51 ........ 4, 8, 21, 22

Fed. Rule of Civ. Proc. 8 ........ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff's Qui Nguyen's ("Plaintiff") Complaint tries to paint Klaviyo as a surreptitious actor who collects consumer browsing and purchasing data for its own benefit. This simply is not true. In actuality, Klaviyo provides a robust business-to-consumer marketing automation platform that its customers can use to connect with consumers across a wide variety of channels, from email to text messaging, and beyond. And notably, Klaviyo *only* collects end-user data on behalf of its customers after they have represented to Klaviyo that they will obtain the necessary permissions, valid consents, and releases to lawfully transmit, store, and use the data. Such data belongs to the customers, and Klaviyo uses and accesses that data at the customers' direction in accordance with Klaviyo's Terms of Service and Privacy Policy. Further, Klaviyo's software tools *only* appear on a customer's website if that website owner affirmatively elects to host the tool and integrate it with Klaviyo's services. Klaviyo is an industry leader that provides a powerful platform that brands and websites can use to better serve their customers. It is not, as Plaintiff alleges, an indiscriminate collector of consumer data.

Plaintiff brings suit against Klaviyo for claims under the California Invasion of Privacy Act ("CIPA") that are predicated on his lack of consent to the collection of his data. Plaintiff's consent to the collection of his data and the data being shared with Klaviyo through his acceptance of clear, publicly available Terms of Service and Privacy policies is, in of its own, fatal to Plaintiff's claims.[1] *See Garcia v. Enter. Holdings, Inc.,* 78 F. Supp. 3d 1125, 113 (N.D. Cal. 2015) (dismissing CIPA claims because "given the express provisions of the Privacy Policy and TOS, which ostensibly contradict his bare allegation that he did not consent, Plaintiff must allege additional facts to support his claim."). Because "the terms of [a] contract, which are not subject to change, preclude plaintiff's claim[s]," the claims should be dismissed with prejudice. *Zamora v. Solar*, 2016 WL 3512439, at *5 (C.D. Cal. June 27, 2016).

[1] For the reasons explained in Klaviyo's Request for Judicial Notice, concurrently filed herewith, the Court may take judicial notice of Every Man Jack's Terms of Use, Privacy Policy, home webpage, and check-out page, and Shopify' Privacy Policy on a motion to dismiss.

Even if Plaintiff could overcome his consent to the policies, the Complaint fails to plausibly allege (1) that Klaviyo was a third-party eavesdropper, or (2) that Klaviyo intercepted the contents of a communication as required by § 631(a). *See* Cal. Penal Code § 631(a). To plead that Klaviyo is a third-party eavesdropper—as opposed to a mere extension of the website Plaintiff was visiting—Plaintiff must plausibly allege that Klaviyo is capable of using the information it collected for its own purposes. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023). But the Complaint alleges only that Klaviyo was capable of using anonymized data that was derived from collected information—not the collected information itself. Courts in this District have held that allegations like Plaintiff's are insufficient to plausibly allege that software platforms like Klaviyo are third-party eavesdroppers under § 631(a). *See Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (dismissing claim under § 631(a) against software that was only capable of using information about consumers in "an aggregated and de-identified manner" and was not capable of using the "granular information" about the users that was actually collected).

To plead that Klaviyo intercepted the contents of Plaintiff's communications, Plaintiff must plausibly allege the substantive communications that he believes Klaviyo intercepted. He does not. Instead, the Complaint only identifies general categories of information that were allegedly collected. These allegations do not plausibly allege that Klaviyo intercepted the contents of any of Plaintiff's communications as required by § 631(a). *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (dismissing § 631(a) claim where plaintiff alleged "that Defendant generally collects personal information from website users," but did not "allege any substantive communications by Plaintiff that she believes [Defendant] intercepted.").

Because Plaintiff fails to state a claim based on CIPA § 631(a) or any other eavesdropping provision of CIPA, his cause of action under § 635 also fails. A plaintiff only has a private right of action under CIPA § 635 if they allege that someone eavesdropped on them using an eavesdropping device manufactured or sold by the defendant. *See* Cal. Penal Code § 635. Because Plaintiff fails to state a claim against Klaviyo under CIPA § 631(a) and does not allege any eavesdropping, he has no private right of action under CIPA § 635. *Graham v. Noom, Inc.*, 533 F.

Supp. 3d 823, 835 (N.D. Cal. 2021) (because plaintiff failed to state a claim under CIPA § 631(a), "there is no eavesdropping," and the plaintiff "ha[s] no private right of action" based on CIPA § 635).

Finally, Plaintiff does not have standing to seek injunctive relief based on any of his claims because there is no threat of future harm to Plaintiff. Plaintiff "now has notice of" Klaviyo's data collection, and any future "use [of Every Man Jack's website] would constitute consent" to the data collection. *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 952 (S.D. Cal. 2024). "Plaintiff therefore has no standing to seek injunctive relief." *Id.* (dismissing claim for injunctive relief based on CIPA § 631(a)).

For the foregoing reasons, Plaintiff's individual Complaint should be dismissed in its entirety.

## II. BACKGROUND

### A. Klaviyo's Business[2]

Klaviyo provides a powerful business-to-consumer marketing automation platform for brands and websites. *See* https://www.klaviyo.com. Business-to-consumer marketing automation platforms, like Klaviyo's, focus on managing a business's relationships with their customers. *See* https://www.klaviyo.com/platform/what-is-b2c-crm. Klaviyo's platform is tailored for personalization, enabling its customers to better understand and interact with their own customers. *Id.* For example, Klaviyo's platform enables business to automate personalized marketing communications to millions of users across various channels, like email and text message. *Id.* Using Klaviyo's platform and tools, Klaviyo's customers can better understand their own customers' preferences and behaviors and based on that information, deliver more useful marketing to their users, from personal product recommendations to discounts and promotions. *Id.* Klaviyo's software only operates on its customers' websites if the customers elect to host the tools on their site and agree to Klaviyo's Terms of Service and Privacy Policy. *See* https://www.klaviyo.com/legal. Klaviyo's Terms of Service require its customers to warrant that

---

[2] While this information is not necessary for the Court's determination of the Motion, Klaviyo provides this added context for the Court's benefit.

they will obtain the necessary permissions, valid consents, and releases to lawfully transmit, store, and use data they collect from end-users. *See* https://www.klaviyo.com/legal/terms-of-service at § 7.1..

**B. Facts Alleged in Plaintiff's Complaint**

On August 4, 2025, Plaintiff filed a complaint alleging claims against Klaviyo based on CIPA §§ 631, 635, and 638 *et seq.* on behalf of himself and a purported class. *See* Compl. The Complaint is centered on one of Klaviyo's tools, the Klaviyo JavaScript "object," which Klaviyo's customers can install on their websites to collect information regarding how users are interacting with their websites so that they can better serve users with more personalized content, like advertisements and marketing emails. *See* Compl. at Figure 3.

The Complaint alleges that Klaviyo's software is used on thousands of websites to "surreptitiously collect[] information on the products consumers are browsing and purchasing," including "product name, product price, product category, URL corresponding with the product image, [] the descriptive web page URL" and "search terms that a consumer inputs into the search bar on a website." *Id.* at ¶ 15. The Complaint refers to these categories of information collectively as "Consumer Web Activity." *Id.*

While the Complaint purports to describe a concerted effort to collect highly detailed information regarding online consumers, the Complaint is noticeably vague about the information Plaintiff contends Klaviyo collected from ***him***. Plaintiff alleges that he visited a single website that purportedly used Klaviyo's software: www.everymanjack.com. *Id.* at ¶ 33. Plaintiff alleges he visited the site "to communicate his personally identifiable information." *Id.* Plaintiff also alleges vaguely that while he used www.everymanjack.com, Klaviyo collected data regarding the "URLs, names, and prices of products he viewed and purchased along with any text he typed into the website's search bar." *Id.* at ¶ 35. But he does not allege when he purportedly visited the website, what information he intended to communicate, or any actual information that was collected.

Plaintiff's allegations regarding his knowledge of Klaviyo's data collection and his lack of consent thereto are even more vague. Plaintiff states conclusively that he "was not aware that Klaviyo's Tracking Tools were embedded on the website," "did not know, nor had reason to know"

that Klaviyo collected his Consumer Web Activity, and that he "did not give Klaviyo consent to collect his Consumer Web Activity or any information about him whatsoever." *Id.* ¶¶ 34, 38-39. But the Complaint does not allege any facts to support these conclusions.

### C. Judicially Noticeable Facts

Contrary to the bare conclusions in Plaintiff's Complaint, the actual content of the www.everymanjack.com site makes clear Plaintiff consented to a third-party service provider like Klaviyo collecting his information from the website.

On the home page of www.everymanjack.com, a banner appears at the bottom of the page stating: "This website uses cookies to ensure you get the best experience on our website."




Ex. A at 2 (excerpted).

The banner also contains a link to Every Man Jack's Privacy Policy and provides users with the option to change their cookie consent preferences if they do not want their data collected. *Id.*; *see also* Ex. B at 2 (providing checkboxes whereby Plaintiff could reject cookies). The banner also appears at the bottom of subsequent pages of Every Man Jack's site, which Plaintiff alleges he visited. *See,* Compl. ¶ 35 (pleading that Plaintiff viewed other pages of the site); Ex. E (showing cookie banner on subsequent site page).

Links to Every Man Jack's Privacy Policy and Terms of Service also appear on the checkout page used to make a purchase from www.everymanjack.com. In fact, its hyperlinks to the Terms of Service and Privacy Policy are underlined, directly below the "Pay now" button used to complete a purchase.




Ex. C at 2 (excerpted).

By alleging that he made a purchase from www.everymanjack.com, Plaintiff necessarily alleges that he saw the checkout page and its bolded, underlined hyperlinks. *See* Compl. ¶ 35 (pleading that Plaintiff made a purchase).

Plaintiff's viewing of the Terms of Service and Privacy Policy is important because they include agreements between Every Man Jack and its users regarding the collection of broad categories of personal information. The Terms of Service state in bold that "[b]y using the Website you accept and agree to be bound and abide by these Terms of Use and our Privacy Policy." Ex. E at 2. Under the Privacy Policy, in turn, a user agrees to the collection of their name, postal address, IP address, email address, Social Security Number, driver's license number, passport number, and other similar identifiers, as well as the user's "geographic location." Ex. D[3,4] at 3–5. The Policy further includes agreements to the collection of information regarding a user's activities on the website and the broader internet, including a user's "which pages of [the] Site were visited, the order in which they were visited, when they were visited, and which hyperlinks were clicked," and "the URLs from which [the user] linked to [the] Site." *Id.*

Every Man Jack's Privacy Policy permits not only the collection of these broad categories

[3] For the reasons explained in Klaviyo's Request for Judicial Notice, concurrently filed herewith, the Court may take judicial notice of Every Man Jack's Terms of Use, Privacy Policy, and check-out page on a motion to dismiss.

[4] Throughout this Motion, Klaviyo cites to the versions of Every Man Jack's Terms of Use and Privacy policy that were in effect from May 19, 2022 to July 9, 2025. To the extent that Plaintiff argues he accessed www.everymanjack.com after that date, the post-July 9, 2025, versions of these agreements contain the same provisions Klaviyo relies on herein. *See* Ex. G (July 9, 2025 Terms of Service); Ex. F (July 9, 2025 Privacy Policy).

of data, but also the sharing of the data with third-party service providers. For example, the Privacy Policy states that Every Man Jack may share the collected data with third-party "service providers to carry out certain tasks," including "[s]erving and [t]argeting ads" and "[d]istributing emails." *Id.* at 7. Notably, these are the exact purposes for which Plaintiff alleges Klaviyo collected his data: "to allow Klaviyo to send consumers marketing emails and text messages." Compl. ¶ 19.

Every Man Jack's checkout page also provides notice of Shopify's Privacy Policy. Every Man Jack's checkout page included the notice that: "By continuing, you agree to [Shopify's] Terms of Service and acknowledge the Privacy Policy." Ex. C at 3 (underline in original).[5] This statement appears directly below the "Pay now" button. And, like Every Man Jack's Privacy Policy, Shopify's Policy permits the collection of data from www.everymanjack.com and the sharing of that information with third-party advertising partners. Under Shopify's Privacy Policy, Shopify may collect "information regarding" consumers "interactions with Shopify Merchants," "the products [they] view and visit," their "order history," and their "name[s], shipping address[es], and "email address[es]." Ex. H at 2, 3. Shopify's Privacy Policy also allows Shopify to share user's Personal Data with third-party service providers, including "[m]arketing, [a]dvertising, and [a]nalytics [p]artners," like Klaviyo. *Id.* at 5.

The Complaint does not allege any facts indicating that Plaintiff did not consent to Every Man Jack's Terms of Service and Privacy Policy, or Shopify's Privacy Policy. Nor does it allege that Plaintiff did not intend to provide his information to Every Man Jack, or any reason that the agreements would not cover collection of the data that Plaintiff claims Klaviyo captured.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief. "A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6)." *Reilly v. Apple Inc.*, 578 F. Supp. 3d

[5] Shopify is an e-commerce company that provides a platform that companies like Every Man Jack can use to build their web store fronts. *See* https://www.shopify.com/about. Every Man Jack's website is built using Shopify's tools. *See*, *e.g.*, Ex. C (showing Shopify used to implement checkout page on www.everymanjack.com).

1098, 1105 (N.D. Cal. 2022) (citations and internal quotation marks omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating whether a complaint should be dismissed, the court does not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

To plead a violation of CIPA § 631(a), a plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read "the contents or meaning" of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities. Cal. Penal Code § 631(a); *see also Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (Cal. 1978). Plaintiff only alleges a claim under the second theory: that Klaviyo willfully read the contents or meaning of a communication without consent. *See* Compl. ¶¶ 47-57. To state such a claim, Plaintiff must plausibly allege (1) the absence of consent of all parties to the communication; (2) eavesdropping by a third-party nonparticipant to the communication; and (3) an interception of the contents of a communication; (4) while the communication is in transit. Cal. Penal Code § 631(a); *see also Graham*, 533 F. Supp. 3d at 831 (claim under clause two of § 631(a) may be dismissed based on complaint's failure to plausibly allege lack of consent, eavesdropping by a third party, or interception of the contents of a communication).

Under CIPA § 638.51, "a person may not install or use a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). However, "[a] provider of electronic or wire communication service may use a pen register or a trap and trace device . . . if the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b). Thus, as with a claim under § 631(a), a plaintiff must plausibly allege they did not consent to the installation of the pen register or trap and trace device to state a claim under § 638.51. *C.f.*, *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (considering on motion to dismiss whether plaintiff's consent precluded claim under § 638.51).

CIPA § 635 bars the manufacture, assembly, sale, offer for sale, advertisement, possession, transportation, importation, or furnishing to another any device which is primarily or exclusively designed or intended for eavesdropping. Cal. Penal Code § 635. To have a private right of action based on § 635, a plaintiff must plausibly allege they were injured by defendant's eavesdropping device, *i.e.*, a plaintiff must plead the device was used to eavesdrop on them. If "there is no eavesdropping, there is no violation of CIPA" and plaintiff has "no private right of action" based on § 635. *Graham,* 533 F. Supp. 3d at 835. Here, because the only eavesdropping[6] claim Plaintiff alleges is under § 631(a), he must plausibly allege that claim to have a private right of action based on § 635. *See id.*

## III. ARGUMENT

### A. Plaintiff's Complaint Fails to State a Claim Under CIPA § 631(a)

Plaintiff's Complaint fails to state a claim for violation of CIPA § 631(a) because Plaintiff cannot plausibly allege that he did not consent to collection of his data. But even if he could, the Complaint also fails to allege two other required elements of a claim under § 631(a): that Klaviyo was a third-party eavesdropper to his communications with Every Man Jack, and that Klaviyo read or attempted to read or learn the contents of Plaintiff's communications.

#### 1. Plaintiff Does Not Plausibly Allege a Lack of Consent to Collection of His Data

Plaintiff's Complaint fails to plausibly allege that he did not consent to the collection of his data because, per the operative Terms of Use and Privacy Policy of www.everymanjack.com, by using the site, Plaintiff consented to Every Man Jack sharing his Personal Information with third party service providers, including Klaviyo. Ex. E at 2; Ex. D at 8. Shopify's Privacy Policy, which

---

[6] Plaintiff's claim under CIPA § 638.51 cannot establish an injury from any eavesdropping because § 638.51 deals with pen registers and trap and trace devices that record non-content information related to a communication, which courts distinguish from eavesdropping devices that record content. *See* Cal. Penal Code § 638.50 (defining both pen register and trap and trace device as devices or processes that do not record the contents of a communication); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("California courts interpret 'eavesdrop,' . . . to refer to a third party secretly listening to a conversation," *i.e.*, the contents of a communication).

users of www.everymanjack.com agree to by making a purchase from the site, also includes consent to the collection and sharing of user data. Ex. H at 2, 3, 5.

"Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint." *Garcia,* 78 F. Supp. 3d at 1136. A merely conclusory allegation that "Plaintiff denies having conferred his consent" is insufficient where it is "contradicted by matters properly subject to judicial notice." *Id.* (dismissing claim under § 631(a) where "express provisions of the Privacy Policy and TOS . . . ostensibly contradicted [plaintiff's] bare allegation that he did not consent"). One way that a website user may consent to collection of their data is through the acceptance of a terms of service or privacy policy disclosing such collection. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4-5 (N.D. Cal. July 28, 2021) (finding "plaintiffs consented to the collection of the data at-issue" by "consent[ing] to [defendant's] privacy policy"); *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) (dismissing claim under § 631(a) where "Privacy Policy disclos[ed] each action that [plaintiff] . . . challeng[ed] as intrusive, including collection of sensitive information").

When determining whether a user consented to a website's privacy policy or terms of use, courts generally categorize agreements as one of three types: "clickwrap," "browsewrap," or "sign-in wrap" agreements. "Clickwrap" agreements require website users to click on an "I agree" box after they are presented with a list of terms and conditions. *Silver*, 2021 WL 3191752 at *3. "Browsewrap" agreements exist where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen, and a user gives consent by using the website. *Id.* "Sign-in wrap" agreements are those that present a screen that states that acceptance of a separate agreement is required before a user can access a product or service. Regardless of form, online contracts are enforceable "based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Snyder v. G6 Hosp. LLC*, 2025 WL 2426613, at *3 (C.D. Cal. Aug. 18, 2025),

a. *By Agreeing to Every Man Jack's Terms of Service and Privacy Policy, Plaintiff Consented to Collection of His Information*

Plaintiff agreed to Every Man Jack's Privacy Policy and Terms of Use, and thus consented to the collection of his data.

*First*, Every Man Jack's website provided reasonably conspicuous notice of the Terms of Service and Privacy Policy. On the home page for www.everymanjack.com, a banner appears at the bottom of the page stating: "This website uses cookies to ensure you get the best experience on our website." Ex. A at 2.[7] The banner further links to Every Man Jack's Privacy Policy and provides a button whereby Plaintiff could have changed his cookie consent preferences if he did not want his data collected. *Id.*; *see also* Ex. B (providing checkboxes whereby Plaintiff could reject cookies). Because the "Cookie Banner gave Plaintiff[] notice as to the use of cookies, and provided Plaintiff[] the option to change cookie consent preferences," the banner gave Plaintiff conspicuous notice of the Privacy Policy. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025) (dismissing claim under federal equivalent of CIPA, finding cookie banner and linked privacy policy "clearly disclos[ed]" privacy policy). Further, the "Privacy Policy" link is denoted as a clickable hyperlink by being a different font color and is a clearly readable dark font against a white background, "which stands out from most of the surrounding text" on the page. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (notice of agreement was reasonably conspicuous where "hyperlink to privacy policy is displayed in a bright green font against a white background"); *see also Garcia*, 78 F. Supp. 3d at 1130 (dismissing claim under CIPA § 631(a) based on site's Terms of Service and Privacy Policy where both were linked in banner at the bottom of page in dark gray text on white background). The banner also appears at

[7] Exhibit A depicts the cookie consent banner as it appeared on Every Man Jack's home page from at least August 4, 2024, to January 30, 2025. The cookie consent banner that has appeared on Every Man Jack's home page from January 30, 2025 to August 4, 2025 when Plaintiff filed his Complaint contains the same notice of Every Man Jack's Privacy Policy, and even further detailed information regarding how Every Man Jack uses cookies on its site. *See* Ex. K at 2. Because Plaintiff's claims have a one-year statute of limitations, *see Montalti v. Catanzariti,* 191 Cal. App. 3d 96, 98 (Ct. App. 1987), Every Man Jack's home page had a cookie consent banner notifying Plaintiff of its Privacy Policy for the entire period during which Plaintiff could have visited the website and brought his claims within the statute of limitations.

the bottom of subsequent product pages on www.everymanjack.com, which Plaintiff alleges he visited. *See,* Compl. ¶ 35 (pleading that Plaintiff viewed other site pages); Ex. E (showing cookie banner on subsequent site page).

Plaintiff also would have received reasonably conspicuous notice of the Privacy Policy and Every Man Jack's Terms of Service when he made a purchase on www.everymanjack.com. *See* Compl. ¶ 35 (pleading that Plaintiff made a purchase). Every Man Jack's checkout page includes hyperlinks to Every Man Jack's Terms of Service and Privacy Policy, both of which appear in bold font and underline to indicate they are clickable links. *See* Ex. C at 3. These links are placed just below the "Pay now" button, which Plaintiff would need to click to complete a purchase. Courts have routinely found that notices like these, with underlined hyperlinks to the agreements placed near the button used to complete a purchase, provide reasonably conspicuous notice of the terms of the agreements. *See, e.g.*, *Slaten v. Dick's Sporting Goods, Inc.*, 2024 WL 1136399, at *4 (C.D. Cal. Feb. 2, 2024) (notice of agreements was reasonably conspicuous where links to agreements were directly below a "Place Order Button" and "underlined, indicating that they are hyperlinks"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (hyperlinks that were close to "sign-up" button but were not underlined were nonetheless conspicuous); *Silver*, 2021 WL 3191752, at *3 (agreement terms were conspicuous where "the hyperlink to the privacy policy [was] located close to the 'place order' button, thus it [was] hard for a user placing an order to miss it."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (links to agreements were conspicuous where "hyperlinks to the Terms and Conditions and Privacy policy appear[ed] directly below the buttons for registration.").

Moreover, the notice of the Terms of Service and Privacy Policy was conspicuous because their links were located on a checkout page that was "uncluttered and wholly visible." *Peter*, 445 F. Supp. 3d at 586. Particularly, the page includes "only fields for the user to enter his or her credit card details, buttons to register for a user account or to connect the user's pre-existing" accounts, and the notice regarding the Terms of Service and Privacy Policy. *Meyer*, 868 F.3d 66 at 78. Courts in this District have found that notices on similarly uncluttered pages were reasonably conspicuous. *See Peter*, 445 F. Supp. 3d at 586 (finding page was uncluttered and notice of

agreement was reasonably conspicuous because page was like the one in *Meyer*, 868 F.3d 66). Thus, Every Man Jack's website provided reasonably conspicuous notice of the terms to which Plaintiff would be bound. *Lakes*, 777 F. Supp. 3d at 1054 (links to privacy policy in cookie banner that was presented when plaintiff "first arrived at the website" and "again presented . . . during the [site's] store checkout process" provided plaintiff with adequate notice of agreements).

*Second,* Plaintiff manifested his assent to the Terms of Service and Privacy Policy by continuing to use the site after he received notice. Every Man Jack's Terms of Service states in bold that "[b]y using the Website you accept and agree to be bound and abide by these Terms of Service and our Privacy Policy," and provides a link to the Privacy Policy. Ex. E at 2. Plaintiff alleges that he used www.everymanjack.com, (*see, e.g.*, Compl. ¶ 33), and thus concedes that he took the action needed to manifest his assent to the Terms of Service and Privacy Policy. *Garcia*, 78 F. Supp. 3d at 1137 (finding plaintiff failed to plead lack of consent where, under site's Privacy Policy and Terms of Use, plaintiff consented to the agreements by continuing to use the site).

Because Every Man Jack's Website provided Plaintiff with reasonably conspicuous notice of the Terms of Service and Privacy Policy, and Plaintiff took an action to manifest his assent to the agreements, both the Terms of Service and Privacy Policy are enforceable against Plaintiff.

*Finally*, by agreeing to Every Man Jack's Terms of Service and Privacy Policy, Plaintiff consented to the collection of his website activity and personal information.

Under the Privacy Policy, Plaintiff agreed that Every Man Jack may "collect the Personal Information" about Plaintiff. Ex. D at 2. The Privacy Policy's definition of "Personal Information" includes a user's "Usage Information," including "among other things, which pages of [the] Site [the user] visited, the order in which they were visited, when they were visited, and which hyperlinks were clicked." *Id.* at 3. Plaintiff's Complaint, in comparison, alleges Klaviyo collected "the URLs, names, and prices of the products he viewed and purchased along with any text he typed into the website's search bar," Compl. ¶ 35, *i.e.*, which pages he visited, information from the pages he visited such as product price, and other Usage Information like the search terms he used. In other words, he alleges nothing more than that Klaviyo collected the exact types of information the Privacy Policy told him would be collected. Similarly, Plaintiff's Complaint

further alleges his "contact information" was collected. Compl. ¶ 36. But here again, the Privacy Policy's definition of "Personal Information"—which Plaintiff agreed Every Man Jack could collect—includes Plaintiff's "name, email address, postal address, and telephone number." Ex. D at 3.

Plaintiff not only agreed to the collection of his "Personal Information," but further agreed that Every Man Jack may share Plaintiff's Personal Information with third-party "service providers to carry out" "[s]erving and targeting ads" and "[d]istributing emails." Ex. D at 7. These are the exact purposes for which Plaintiff alleges Klaviyo collected his website activity: "to allow Klaviyo to send consumers marketing emails and text messages." Compl. ¶ 19.

Accordingly, by agreeing to Every Man Jack's Terms of Service and Privacy Policy, Plaintiff consented to (1) the collection of his contact information and information regarding his interactions with Every Man Jack's website and (2) the sharing of such information with third-party service providers, like Klaviyo, who provide marketing emails and text messages.

*b. By Agreeing to Shopify's Privacy Policy, Plaintiff Further Consented to Collection of His Information*

Even if Plaintiff had not consented to Every Man Jack's agreements, Plaintiff also independently consented to Shopify's Privacy Policy, which also included his content to the collection and sharing of his data.

*First*, Every Man Jack's checkout page provided reasonably conspicuous notice of Shopify's Privacy Policy. The checkout page on www.everymanjack.com includes a notice stating that "By continuing, you agree to [Shopify's] Terms of Service and acknowledge the Privacy Policy." Ex. C at 3 (underline in original). This statement is placed directly below the "Pay now" button. The Privacy Policy link is made conspicuous by underlining, and the page denotes it as a clickable hyperlink by bolding it when a user mouses over it. *See* Ex. J. Further, as explained above (*see* § III.A.1.a, *supra*), the checkout page was uncluttered and wholly visible. Courts have routinely found that notices like these that are on uncluttered checkout pages, have hyperlinks to the agreement underlined, and are placed next to the button used to complete a purchase, provide reasonably conspicuous notice of the terms of the agreements. *See, e.g.*, *Peter v. DoorDash, Inc.*,

445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (hyperlinks that were close to "sign-up" button and on uncluttered sign up page, but were not underlined, were nonetheless conspicuous); *Silver*, 2021 WL 3191752, at *3 (agreement terms were conspicuous where "the hyperlink to the privacy policy [was] located close to the 'place order' button, thus it [was] hard for a user placing an order to miss it."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (links to agreements were conspicuous where "hyperlinks to the Terms and Conditions and Privacy policy appear[ed] directly below the buttons for registration" and were on an uncluttered page).

*Second,* Plaintiff unambiguously manifested his assent to the Privacy Policy by clicking the "Pay now" button when making a purchase. Plaintiff concedes that he made at least one purchase on www.everymanjack.com. Compl. ¶¶ 34-35. To make a purchase, Plaintiff would have needed to click the "Pay now" button. Multiple courts have found that clicking a button to complete a purchase or otherwise access a website's services constitutes an unambiguous manifestation of assent. *See, e.g.*, *Silver*, 2021 WL 3191752 at *4 (user unambiguously manifested assent by clicking "Place Order" button); *Javier*, 2021 WL 940319, at *3 (user unambiguously manifested assent by clicking "View My Quote" button); *Peter*, 445 F. Supp. 3d at 582 (user unambiguously manifested assent by clicking "Sign-Up" button).

*Finally*, by agreeing to Shopify's Privacy Policy, Plaintiff consented to the collection and sharing of his website activity and personal information.

Under the Privacy Policy, Plaintiff agreed that Shopify may collect "Personal Data" about Plaintiff, including all the same types of information Plaintiff alleges Klaviyo collected. Ex. H. Just like Every Man Jack's own Privacy Policy, Shopify's definition of "Personal Data" covers information regarding how Plaintiff "interact[ed] with Shopify Merchants," such as www.everymanjack.com, including the "products [he] view[ed] and visit[ed]," and his "order history." *Id.* at 3. Plaintiff's Complaint alleges Klaviyo collected "the URLs, names, and prices of the products he viewed and purchased along with any text he typed into the website's search bar." Compl. ¶ 35. These, once again, are nothing more than the products he viewed and purchased, his order history, and his other interactions with the site, such as his search queries, all of which Shopify disclosed would be collected from users of www.everymanjack.com. Similarly, Plaintiff's

Complaint further alleges his "contact information" was collected. Compl. ¶ 36. But here again, the Privacy Policy's definition of "Personal Data"—which Plaintiff agreed Shopify could collect—includes Plaintiff's "name, shipping address, [and] email address." Ex. H at 2.

Plaintiff not only agreed to the collection of his "Personal Data," but further agreed that Shopify may share Plaintiff's Personal Data with third-party service providers, including "[m]arketing, [a]dvertising, and [a]nalytics [p]artners," like Klaviyo. Ex. H at 5; Compl. ¶ 19 (alleging Klaviyo is a third-party platform who provides "consumers marketing emails and text messages.").

Accordingly, by agreeing to Shopify's Privacy Policy, Plaintiff consented to (1) the collection of his contact information and information regarding his interactions with Every Man Jack's website; and (2) the sharing of such information with third-service providers engaged in marketing and advertising, including Klaviyo.

*c. Plaintiff Does not Plead Any Facts Contradicting His Consent to the Every Man Jack or Shopify Agreements*

Plaintiff's Complaint does not allege any facts contradicting his consent to Every Man Jack's Terms of Service and Privacy Policy, or Shopify's Privacy Policy. The Complaint includes only the bare conclusion that "Plaintiff did not give Klaviyo consent to collect his Consumer Web Activity or any information about him whatsoever." Compl. ¶¶ 39, 56. But "given the express provisions of the Privacy Polic[ies] and [Terms of Service], which ostensibly contradict his bare allegation that he did not consent", Plaintiff would need to allege additional facts to support his claim that he did not consent. *Garcia*, 78 F. Supp. 3d at 1137 (dismissing claim under § 631(a) based on "the failure to adequately allege lack of consent"). Plaintiff failed to do so. At bottom, "[P]laintiff[] consented to the collection of the data at-issue," and thus cannot state a claim for the violation of the second clause of CIPA § 631(a). *Silver*, 2021 WL 3191752 at *5 (dismissing claims under § 631(a)).

2. Plaintiff Does Not Plausibly Allege that Klaviyo is a Third-Party Eavesdropper

Even if Plaintiff had not consented to the collection of his data, the Complaint fails to plausibly allege a claim under CIPA § 631(a) because Klaviyo is not a third party to the communications between Plaintiff and Every Man Jack.

A person is only liable under CIPA § 631(a) if they "secretly listen[] to another's conversation." *Graham*, 533 F. Supp. 3d at 831 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). Further, only a third party can secretly listen to a conversation. *Id.* (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)). Courts in this District are split on which test they use to determine whether a software provider whose software is used on customer's websites to collect data is a third party. Some courts consider whether the software provider actually uses collected data for its own purpose, *see Graham*, 533 F. Supp. 3d at 832, while others consider whether the software provider merely "has the capability to use its record of the interaction" for its own purpose. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023). But under either test, defendant must use or be capable of using "the data itself," not some other information derived from the data. *Graham*, 533 F. Supp. 3d at 831; *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). And at least one court in the District has held that allegations that a software provider "may use and share information in an aggregated and de-identified manner" including for "improvement of [its] services" do not plausibly allege that a software provide does or is capable of using the collected data itself. *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (dismissing claim under clause two of § 631(a)).

Here, just as in *Love v. Ladder Fin. Inc.*, Plaintiff alleges only that Klaviyo uses "aggregated and de-identified" information to improves its own services. Particularly, the Complaint alleges that Klaviyo's terms of use state that "Klaviyo may collect and derive from Customer Data ***aggregated data*** that ***does not identify Customer, any third-party entity or any natural persons***, and use and disclose such aggregated data for [] legitimate business purposes, which may include but is not limited to ***Services improvement, service and product development***." Compl. ¶ 30 (emphasis added). Plaintiff's allegations are nearly identical to those in *Love*, where

the plaintiff alleged that a software provider was a third-party eavesdropper because its policies stated that it "may use and share information ***in an aggregated and de-identified manner*** at [its] discretion, including for ***research, analysis, modeling, marketing, and improvement of [its] services***." *Love*, 2024 WL 2104497 at *2 (emphasis added). The court in *Love* reasoned such allegations were not enough to establish that the defendant software provider was a third party to the communications between a website user and the website because there was "no coherent story of how or why [the software provider] would learn . . . granular information about users of one of its customers' sites." *Id.*

Here, Plaintiff's complaint is similarly devoid of allegations regarding how Klaviyo would or could use the actual data collected about Plaintiff's use of www.everymanjack.com for any of the purposes allegedly outlined in Klaviyo's terms of use. Instead, Plaintiff simply quotes the terms and vaguely alleges that Klaviyo "has the capability to use Consumer Web Activity to develop and/or improve its own products and services" and that Klaviyo has done so.[8] Compl. ¶ 55. But "[m]erely quoting these lines from the policy and then making broad assertions about use is not enough to state a claim under the second clause of § 631(a)." *Love*, 2024 WL 2104497 at *2.

3. Plaintiff Does Not Plausibly Allege that Klaviyo Read or Attempted to Read or Learn the Contents of Plaintiff's Communications

Finally, Plaintiff fails to state a claim under CIPA § 631(a) because his Complaint alleges only that Klaviyo collected record information about Plaintiff's interactions with www.everymanjack.com, not the contents of any communications.

To state a claim for a violation of CIPA § 631(a), a plaintiff must allege that defendant "reads, or attempts to read, or to learn the contents" of a communication. Cal. Penal Code § 631(a). "CIPA borrows the definition of protected 'contents' from the federal Wiretap Act, and therefore only any information concerning the substance, purpose, or meaning of a communication

---

[8] The Complaint purports to allege that Klaviyo used Consumer Web Activity to enable its "customers to leverage Klaviyo's data and compare their e-commerce store's performance with that of other stores within the same industry." Compl. ¶ 32. But again, Plaintiff fails to allege any reason that this purported service would make use of the granular information regarding Plaintiff's use of www.everymanjack.com that Plaintiff alleges Klaviyo collected, as opposed to aggregated and anonymized data.

is protected." *Heiting*, 709 F. Supp. 3d at 1017. "Contents" of a communication "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Graf v. Zynga Game Network, Inc.*, 750 F.3d 1098, 1106 (9th Cir. 2014). A plaintiff cannot "predicate their claim in part on information . . . that is not content;" instead, the plaintiff must "delineate content from non-content records" and plead the specific contents it alleges were intercepted. *Graham*, 533 F. Supp. 3d at 833. To allege a defendant intercepted the contents of a communication, it is not sufficient for a plaintiff to merely allege that the defendant generally collects categories of information; plaintiff must instead allege the substantive communications by plaintiff that they believe defendant intercepted. *Heiting*, 709 F. Supp. 3d at 1018; *see also Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) (dismissing § 631(a) claim where plaintiff did "not identify any substantive communications she believes were impermissibly intercepted"). Here, Plaintiff fails to delineate the allegedly intercepted content from non-content records and fails to allege the substantive communications he believes were intercepted.

*First*, Plaintiff's Complaint does not delineate between the content and non-content records that he alleges Klaviyo intercepted. Plaintiff alleges that Klaviyo purportedly collected "URLs, names, and prices of the products he viewed and purchased along with any text he typed into the website's search bar" and his "contact information when placing an order." Compl. ¶¶ 35-36. But several of these categories, including URLs, pages viewed, and shipping and billing information—*i.e.*, contact information when placing an order—are not "content" for the purposes of CIPA § 631(a). *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (dismissing claim under clause two of § 631(a) because "pages viewed" and "shipping and billing information" do not "constitute[] message content."); *Ramos v. Gap, Inc.*, 2025 WL 2144837, at *4 (N.D. Cal. July 29, 2025) (URLs of sites visited "serve a tracking or routing function," and thus are generally record information, not content of a communication). Thus, Plaintiff's claim is improperly "predicated on non-content information" and is subject to dismissal. *Graham*, 533 F. Supp. 3d at 833 (dismissing claim under CIPA § 631(a) because it was predicated, in part, on non-content information); *see also S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *7 (N.D. Cal. May 15,

2019) (dismissing federal wiretapping claim "to the extent the allegations concern the interception of" record information, such as "date and time information.").

*Second,* Plaintiff does not allege the substance of any communication he believes was intercepted. Instead, Plaintiff identifies only the general categories of information listed above. *See* Compl. ¶¶ 35-36. Plaintiff does not allege, for example, any text he did, in fact, type into the website's search bar, or any other "substantive communications by Plaintiff that [he] believes [Klaviyo] intercepted." *Heiting*, 709 F. Supp. 3d at 1018. "Therefore, Plaintiff has failed to allege that [Klaviyo] eavesdropped on protected contents under [§] 631(a)." *Id.*

**B. Plaintiff Does Not Have a Private Right of Action Under Cal. Penal Code § 635 Because Plaintiff's Complaint Fails to Allege Any Eavesdropping Under CIPA**

Because Plaintiff fails to state a claim under CIPA § 631(a), and also fails to allege any injury under an eavesdropping provision of CIPA, Plaintiff does not have a private right of action under CIPA § 635.

CIPA § 635 prohibits the manufacture, assembly, sale, offering for sale, advertising for sale, possession, transportation, importation, or furnishing of any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another. Cal. Penal Code § 635.[9] However, a plaintiff only has a private right of action under CIPA—including CIPA § 635—if the plaintiff "has been injured by a violation" of CIPA. Cal. Penal Code § 637.2(a). Thus, to state a claim based on CIPA § 635, a plaintiff must establish they were injured by defendant's manufacture, assembly, sale, offering for sale, advertising for sale, possession, transportation, importation, or furnishing of an eavesdropping device; *i.e.*, they must plead the defendant's eavesdropping device was used to eavesdrop on them. If "there is no eavesdropping, there is no violation of CIPA," and the plaintiff "ha[s] no private right of action" based on CIPA § 635. *Graham*, 533 F. Supp. 3d at 835.

[9] CIPA § 635 also applies to devices that are used for the unauthorized interception or reception of communications between cellular radio telephones or landline telephones, but Plaintiff only alleges that Klaviyo's software is an eavesdropping device. Compl. ¶ 61.

For the reasons explained in § III.A.1, *supra*, Plaintiff's Complaint fails to state a claim under § 631(a) or to allege any eavesdropping or injury therefrom.[10] Because Plaintiff does not plausibly allege any eavesdropping, Plaintiff does not have a private right of action based on CIPA § 635. *Graham*, 533 F. Supp. 3d at 835; *see also Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024) (dismissing claim based on CIPA § 635 where plaintiff did not allege any "injury resulting from Defendants' possession or assembly of the purported eavesdropping devices.").

**C. Plaintiff's Complaint Fails to State a Claim Under Cal. Penal Code § 638.51[11] Because it Does Not Plausibly Allege Lack of Plaintiff's Consent**

Because Every Man Jack is a provider of an electronic communication service and Plaintiff consented to Every Man Jack's collection of his data, Plaintiff does not plausibly allege a claim under CIPA § 638.51.

Under CIPA § 638.51(a): "Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51. Under CIPA § 638.51(b)(5), installation of a pen register or trap and trace device is not a violation of § 638.51 if a "provider of electronic or wire communication service" does so with "the consent of the user of that service." Cal. Penal Code § 638.51(b)(5).

*First*, a website operator like Every Man Jack falls under the definition of electronic communication service provider. Although, to Klaviyo's knowledge, no court has determined whether a website operator qualifies as a "provider of electronic or wire communication service" to

[10] Plaintiff's claim under CIPA § 638.51 cannot establish an injury from any eavesdropping, because § 638.51 deals with pen registers and trap and trace devices that record non-content information related to a communication, which courts distinguish from eavesdropping devices that record content. *See,* Cal. Penal Code § 638.50 (defining both pen register and trap and trace device as devices or processes that do not record the contents of a communication); *Membrila v. Receivables Performance Mgmt.*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) ("The California Court of Appeals has explained that 'eavesdrop' is defined as 'to listen secretly to what is said in private'").

[11] Count III of Plaintiff's Complaint also purports to state a claim under Cal. Penal Code § 638.50. Compl. at 14. However, § 638.50 only provides definitions of terms, and does not set out any actions that would violate CIPA and create a cause of action under CIPA § 637.2. *See* Cal. Penal Code § 638.50.

whom the consent exception under CIPA § 638.51(b)(5) would apply[12], and although CIPA does not explicitly define "electronic communication," other related statutes do—including those that CIPA refers to for definitions and applications. Under Cal. Penal Code § 629.51 (which CIPA § 638.51 refers to for its definition of "prohibited violation"), "electronic communication" is broadly defined to mean "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Cal. Penal Code § 629.51. By providing a website that transfers information, website operators like Every Man Jack provide a service whereby users transfer signs, signals, writings, images, sounds, data, or intelligence of any nature by a wire, and the Complaint alleges as much. Plaintiff alleged that he "used [www.everymanjack.com] to communicate his personally identifiable information," *i.e.*, writings or data, to Every Man Jack. Compl. ¶¶ 33. Such writings and data were transferred to Every Man Jack over the internet, *i.e.*, by a wire. Thus, as pleaded in the Complaint, Every Man Jack is a provider of an electronic communication service and should qualify for the consent exception under CIPA § 638.51(b)(5).[13]

---

[12] Only one case, *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024), has tangentially addressed the issue. In *Mirmalek*, the defendant website operator asserted that CIPA § 638.51(b)(5) was not limited to providers of electronic or wire communication services. *Id.* The *Mirmalek* court rejected this argument and held that because the defendant conceded it was not a provider of electronic or wire communication services, the § 638.51(b)(5) exception did not apply. Other courts who have considered whether website operators qualify for the exceptions under CIPA § 638.51(b) have not held that the website operators are excluded from qualifying as an electronic communications service provider. *See Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *6 (N.D. Cal. Sept. 2, 2025) (declining to dismiss claim under § 638.51(a) based on § 638.51(b)(1) exception only because defendant did not establish it used its trackers to "operate, maintain, and test a wire or electronic communication service" as required by § 638.51(b)(1)); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 42 (S.D.N.Y. 2025) (rejecting application of § 638.51(b)(5) exception to website operator because plaintiff did not consent to data collection, not because website operator was not a qualifying provider).

[13] Moreover, permitting a plaintiff to plead a claim under CIPA § 638.51 based on a website's installation of a pen register or trap and trace device to which the plaintiff consented would violate the general rule that a plaintiff cannot base a claim on actions to which the plaintiff consented. *E.g.*, Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it"); *Kent v. Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D. Cal. July 1, 2013) ("plaintiffs generally may not assert a wrong arising out of an action which they consented to"). Indeed, Plaintiff's complaint implicitly concedes that he needed to plead lack of consent to state a claim under CIPA § 638.51 by attempting to do so (albeit in a conclusory fashion, and contradicted by his agreement to Every Man Jack's Privacy Policy, *see* § III.A.1, *supra*). Compl. ¶ 74 (pleading "Plaintiff . . . did not provide [his] consent to Klaviyo's installation or use of the Tracking Tools.").

*Second,* Plaintiff consented to Every Man Jack using software like Klaviyo's to collect the ***exact*** information he now claims was collected in violation of CIPA § 638.51. Particularly, Plaintiff alleges Klaviyo's software collected "IP addresses, geolocation, device information, and other persistent identifiers from the websites [he] visited." Compl. ¶ 72. But by agreeing to Every Man Jack's Privacy Policy, *see* Section III.A.1.a, *supra*, Plaintiff consented to the collection of his "IP address," "geographic location," device information such as operating system and browser software, and records of other websites plaintiff visited via his "tracking technologies like cookies." Ex. D at 3, 6. He also consented to Every Man Jack using the tracking tools he now complains of, including "cookies and web beacons." *Id.* at 3. Similarly, by agreeing to Shopify's privacy policy, *see* Section III.A.1.b, *supra*, Plaintiff consented to Shopify Merchants, like Every Man Jack, collecting his "IP address," "general location," "device identifiers," and "cookie IDs," which could be used to identify other websites Plaintiff visited. Ex. H at 2. Thus, Plaintiff consented to the use of Klaviyo's software to collect his data from wwww.everymanjack.com, and such actions do not violate CIPA § 638.51. Cal. Penal Code § 638.51(b)(5). Plaintiff fails to state a claim based on CIPA § 638.51.

**D. The Court Should Dismiss Plaintiff's Claims With Prejudice Because Contract Terms That Are Not Subject to Change Preclude Them**

"Where amendment would be futile, a claim is properly dismissed with prejudice." *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)). An amendment would be futile where "the terms of [a] contract, which are not subject to change, preclude plaintiff's claim[s]." *Zamora*, 2016 WL 3512439 at *5.

Here, amendment of Plaintiff's Complaint would be futile because, as explained above, all of Plaintiff's claims are barred by the terms of Every Man Jack's Terms of Service and Privacy Policy and Shopify's Privacy Policy. Thus, Plaintiff's Complaint should be dismissed with prejudice. *Id.* (dismissing complaint with prejudice).

### E. Plaintiff Cannot Seek Injunctive Relief Because He Now Has Notice of Any Data Collection by Klaviyo

Because Plaintiff now indisputably has notice that Klaviyo may collect his data via www.everymanjack.com, Plaintiff does not have standing to seek forward-looking injunctive relief. "To successfully assert a claim for injunctive relief, a plaintiff must contend that, despite knowledge of the asserted violative conduct, he or she may suffer an actual and imminent threat of future harm." *Jones*, 720 F. Supp. 3d at 951. Where, as here, the alleged harm is the collection of a user's data without their consent, a plaintiff cannot seek a forward-looking injunction because they "now ha[ve] notice of [d]efendant's" data collection, and "therefore [plaintiff's] use [of defendant's website] would constitute consent" to the data collection. *Id.* Here, Plaintiff seeks injunctive relief for all of his claims. *See* Compl. at 15 (seeking "[a]n injunction requiring Defendant to cease all unlawful activities."). But all of Plaintiff's claims are based on assertions that his data was collected without his consent. *Id.* ¶¶ 56, 63, 74. "Plaintiff's continued use of [Every Man Jack's] website, now that Plaintiff has notice of Defendant['s] [data collection], would constitute consent to any [collection.]" *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024). "Plaintiff therefore has no standing to seek injunctive relief." *Id.* (dismissing claim for injunctive relief based on CIPA § 631(a)); *Jones*, 720 F. Supp. 3d at 952 (same).

## IV. CONCLUSION

For the foregoing reasons, Klaviyo respectfully requests the Court grant its Motion to Dismiss.

Dated: September 29, 2025

HUESTON HENNIGAN LLP

By: /s/ [signature]
Vicki Chou
Moez M. Kaba
Deeksha Kohli
*Attorneys for Defendant*
*KLAVIYO, Inc.*