William J. Edelman (SBN: 285177)
**MILBERG, PLLC**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (771) 474-1121
Email: wedelman@milberg.com

Heather M. Lopez (SBN: 317598)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse,
Beverly Hills, CA 90212
Telephone: (865) 247-0080
Email: hlopez@milberg.com

Scott Edelsberg (SBN: 330090)
**EDELSBERG LAW, P.A.**
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
Email: scott@edelsbergglaw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

QUI NGUYEN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KLAVIYO, INC.,

Defendant.

Case No. 5:25-cv-06551-EKL

**CLASS ACTION**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: January 14, 2026
Time: 10:00 a.m.
Judge Hon. Eumi K. Lee
Courtroom: 7, 4th Floor

Action filed: August 4, 2025

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... 1

**II. BACKGROUND** .......... 2

**III. LEGAL STANDARD** .......... 3

**IV. ARGUMENT** .......... 4

**A. Plaintiff Plausibly Alleges a CIPA § 631(a) Claim.** .......... 4

1. Klaviyo Cannot Establish Consent. .......... 4

2. Klaviyo Is a Third-Party Eavesdropper. .......... 10

3. Plaintiff Alleges Interception of "Contents." .......... 12

**B. Plaintiff Plausibly Alleges a CIPA § 635 Claim.** .......... 14

**C. Plaintiff Plausibly Alleges a CIPA § 638.51 Claim.** .......... 14

**D. If Relevant, Leave to Amend Is Proper** .......... 16

**E. Plaintiff's Request for Injunctive Relief is Proper** .......... 17

**V. CONCLUSION** .......... 17

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 4

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 5, 6

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........ 17

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 13

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 4

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ 5, 9

*Deivaprakash v. Conde Nast Digital*,
2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) ........ 14

*Doe v. Call-On Doc Inc.*,
No. 24cv2095-GPC(KSC), 2025 WL 1677632 (S.D. Cal. Jun. 13, 2025) ........ 13

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 15

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 16

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 6

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 13

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)........................................................................ 12

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ............................................................... 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)............................................................................... 10, 11

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ...................................................................................... 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........................................................................... 4

*In re Meta Pixel Tax Filing Cases*,
2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) ............................................................. 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1108-09 (9th Cir. 2014)...................................................................... 12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)......................................................................... 13

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......................................................................... 16

*Love v. Ladder Fin., Inc.*,
No. 23-CV-04234-VC, 2024 WL 2104497 (N.D. Cal. May 8, 2024) ............................... 11, 12

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........................................................ 14, 16

*Moody v. C2 Educational Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024)....................................................................... 14

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)........................................................................................ 5

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)........................................................................................... 4

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)................................ 10, 11

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 15

*Selby, et al., v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ........ 14

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 925 (N.D. Cal. 2024) ........ 14

*Sinatro v. Barilla Am., Inc.*,
2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) ........ 17

*Smith v. YETI Coolers*, LLC,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 6, 10, 11

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 4:24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 12

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 4

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 10

*Zamora v. Solar*,
2016 WL 3512439 (C.D. Cal. June 27, 2016) ........ 16

**Rules**

FRCP 15(a)(2) ........ 16

Plaintiff Qui Nguyen hereby responds in opposition to Defendant Klaviyo Inc.'s ("Klaviyo") Motion to Dismiss ("MTD") (ECF No. 18).

## I. INTRODUCTION

Klaviyo's business model is to amass and exploit private data it should never have had access to in the first place. Through its technology, Klaviyo intercepts data across hundreds of thousands of websites to learn everything it can about a person's online behavior on websites using its technology. Klaviyo uses this data to create individually identifiable profiles, and then exploits the data for its own benefit to profit from its massive advertising system by creating marketing products permitting businesses to compare themselves to industry competitors, and by training its own AI model to better predict customer behavior to distinguish itself as providing unique insights.

Klaviyo's motion spends most of its time disputing these allegations through submission of a host of untested evidence not incorporated by reference into the Complaint. Klaviyo essentially seeks summary judgment on its preferred record at the pleading stage, offering a few screen shots and website policies along with various "trust me" inadmissible assurances in its brief that the materials are comprehensive and accurate. Unsurprisingly, the proffered evidence is demonstrably incomplete and even misleading, including a screen shot that suggests text is always present regarding agreement to certain policies when the text not actually always present.

Plaintiff and Class Members did not consent to being profiled by Klaviyo. The "browsewrap" agreements Klaviyo points to are not binding agreements under recent Ninth Circuit law, and Klaviyo's reliance on older district court cases pre-dating the key controlling appellate authority is not persuasive. Regardless, none of the obtuse statements in Klaviyo's proffered policies, even if read together, come close to establishing actual, affirmative consent to the widespread, continuous tracking and profiling Klaviyo engages in here.

Though Klaviyo leans mostly on its consent argument, its other claim-specific arguments fare no better. Each of the arguments it offers have been rejected by other Courts in similar cases as inconsistent with the law, and this court should likewise reject them.

## II. BACKGROUND

Klaviyo develops and sells powerful web tracking software that collects consumer browsing and purchasing activity from e-commerce stores, including websites specializing in healthcare-related purchases. ¶ 1.[1] Hundreds of thousands of websites choose to embed Klaviyo's tracking technology on their platforms. ¶ 2. Klaviyo's technology collects detailed browsing and purchasing activities, including the "name of the product the consumer is browsing, the URL associated with the product page, the URL associated with an image of the product, the product's price, and even search terms the consumer enters on the website." ¶ 3. For example, if a user enters a search on the Every Man Jack website, Klaviyo intercepts the content of the search:


```
"properties": {
  "q": "specialperfume",
  "initial_page_path": "/search",
  "page": "https://www.everymanjack.com/search?q=specialperfume",
  "browser": "Firefox",
  "os": "Mac",
  "$use_ip": true,
  "$is_session_activity": true
```


¶ 17 (Figure 1).

Klaviyo's existence and the details of its tracking conduct are not advertised or apparent to users of websites with Klaviyo's tracking technology. ¶¶ 7, 20-21. Consumers do not know about, let alone consent to, Klaviyo's tracking and profiling. *Id.*

Klaviyo uses the data collected to build comprehensive individualized profiles of consumers. ¶ 23. Klaviyo boasts to websites that these profiles show "[e]verything to know about your customers, in one place" and explains that "customer profiles consolidate data across your stack for a complete picture of each customer: who they are, what they like, and when and how they're engaging with you. All this customer profile data is for building segments and

[1] Unless otherwise noted, citations to "¶ __" are citations to the Complaint, ECF No. 1.

personalizing content." ¶ 23. The profiles are the opposite of anonymous—they intentionally link all identifying information possible to website user behavior. ¶ 25.

Klaviyo works hard behind the scenes to overcome website users' efforts to remain anonymous. These activities include its "identity resolution" process of "maintaining a unified customer record, regardless of the various identifiers (e.g. email, phone number, etc.) used across different touchpoints or devices." ¶ 26. Klaviyo also boasts a feature it calls "anonymous visitor activity backfill." ¶ 27. This feature tracks and maintains a profile of everything a user who has not offered any identifying information does over website visits, and then retroactively assigns that behavior to the user if she returns and eventually provides some contact information. ¶ 27.

Klaviyo exploits this information for its own benefit far beyond simply providing marketing services that any individual website could otherwise choose to perform in-house. Klaviyo aggregates its massive collection of data across its hundreds of thousands of websites to train its own AI model so that it can offer predictions about consumer behavior beyond what any individual website could do with its own data. ¶¶ 28-31. Klaviyo also offers at least one product leveraging its cross-website data to allow e-commerce websites to compare themselves against industry competitors. ¶ 32.

Plaintiff visited and made a purchase from the Every Man Jack website, which unbeknownst to Plaintiff at the time, used Klaviyo's tracking technology. ¶¶ 33-39. Klaviyo collected the contents of Plaintiff's communications with the website including details about the products he viewed and purchased, descriptive URLs related to those products, and any searches Plaintiff performed on the website. *Id.* Plaintiff did not consent to Klaviyo's collection of that (or any) data. ¶ 39.

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility, however, is not certainty or probability. It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *BellAtl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

In other words, a complaint may advance even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* Thus, plaintiffs do not need to substantiate their claims at the pleadings stage, and the complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) (emphasis in original).

## IV. ARGUMENT

### A. Plaintiff Plausibly Alleges a CIPA § 631(a) Claim.

Klaviyo argues Plaintiff's CIPA § 631(a) claim fails because (i) Plaintiff consented to the data interception as a matter of law, (ii) Klaviyo was not a third-party eavesdropper, and (iii) Plaintiff does not allege interception of the "contents" of communications. Each argument lacks merit.

1. <u>Klaviyo Cannot Establish Consent.</u>

Klaviyo bears the burden of establishing consent. *Calhoun v. Google, LLC,* 113 F.4th 1141, 1147 (9th Cir. 2024). "[A]n enforceable agreement may be found where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). Consent is only effective if the disclosure "explicitly notif[ies]" the user of "the particular conduct" or "substantially the same conduct" and the tortfeasor "did not exceed the scope of that consent." *Calhoun*, 113 F.4th at 1147. If a "reasonable user" could have "plausibly understood the [purported] disclosures 'as *not* disclosing that [the defendant] would engage in particular conduct'" then there is no consent. *Id.*; *In re Meta Pixel Healthcare Litig.,* 647 F. Supp.

3d 778, 794 (N.D. Cal. 2022) (confirming terms "must have only one plausible interpretation for a finding of consent.").

*No Assent to Every Man Jack Terms.* Klaviyo cannot meet its burden to show consent because even if the Court considered the various extraneous screen shots of unproven authenticity and relevance Klaviyo improperly attempts to inject into this pleading motion, this case is a pure browsewrap case where assent to terms is lacking because there was no check box or other means for Plaintiff to affirmatively demonstrate acceptance. "Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014) ("[W]e therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."). In addition, where as here "a user simply purchases goods or avails herself of a one-time discount offer, there is less reason for her to expect a continued relationship beyond the purchase" and courts are less willing to find terms conspicuous enough to provide notice. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025).

The Ninth Circuit's *Chabolla* case is fatal to Klaviyo's arguments. In *Chabolla*, the Ninth Circuit considered a website with facts regarding purported assent to terms better for the defendant than the facts here. Specifically, in *Chabolla* the website at least attempted to include text near a button the user had to click to continue suggesting that clicking the button indicated agreement to terms and policies. *Id.* at 1151-53. The Ninth Circuit held that there was nevertheless no assent to those terms because the language near the button did not notify users clearly enough that clicking the button meant agreeing to terms. *Id.* at 1158-59 (where text below button said "signing up"

meant agreeing to terms but button said "[c]ontinue" rather than "sign up," assent not clearly manifested). Here, by contrast, no language near any button a user must click even *attempts* to state that a user is agreeing to any Every Man Jack terms by clicking. This forecloses Klaviyo's argument. *Smith v. YETI Coolers*, LLC, 754 F. Supp. 3d 933, 941-42 (N.D. Cal. 2024) (no assent where "Defendant's website does not require additional action by users to demonstrate assent and does not conspicuously notify them that continuing to use to website constitutes assent to the Privacy Policy and Terms of Use").

Klaviyo's suggestion that assent can be found based on mere use of a website due to a clause buried in terms a user did not manifest assent to is illogical and inconsistent with the Ninth Circuit's analysis in *Berman*, *Oberstein*, and *Chabolla*. Tellingly, the assent section of Klaviyo's brief cites only one 2015 case that predates the Ninth Circuit's elaboration of the applicable framework in *Berman, Oberstein*, and *Chabolla*. MTD at 13 (citing *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015)). The *Garcia* case did not have the benefit of the holdings in those controlling Ninth Circuit cases and as a result its reasoning is, respectfully, inconsistent with subsequent Ninth Circuit authority and the reasoning of more recent district court decisions applying that precedent such as *Smith*, 754 F. Supp. 3d at 941-42.

*Every Man Jack Terms Do Not Establish Consent*. Even if Klaviyo could show that Plaintiff agreed to the Every Man Jack terms it asks the court to consider without the benefit of a record establishing the authenticity and completeness of those terms, the documents do not establish consent to the alleged conduct. Every Man Jack's purported Privacy Policy (ECF No. 18-5) makes no mention of (i) Klaviyo, (ii) Klaviyo's identity resolution practices of building comprehensive user profiles even if users intentionally identify themselves differently across touchpoints and devices while accessing the website, ¶ 26, (iii) Klaviyo's "anonymous visitor activity backfill" functionality that builds dossiers on anonymous users until Klaviyo can link the user to an actual identity, at which time the previous anonymous activity is included in the profile, ¶ 27, (iv) Klaviyo's use of supposedly de-identified Consumer Web Activity to train its own AI

machine learning model, ¶¶ 30-31, nor (v) that information about searches conducted on the website is collected and shared, ¶¶ 15-17.

The nesting definitions (that omit mention of collecting search information) and vague mention of unidentified "Service Providers" to "carry out certain tasks" including "serving and targeting ads" and "distributing emails" leads to more questions than answers. MTD at 13-14. Consumers would have no idea how to even begin figuring out that Klaviyo was a "Service Provider" or that it was surveilling their private interactions to build comprehensive profiles designed to overcome typical methods of remaining anonymous on websites such as using different contact information or not providing any contact information on previous visits. A reasonable user could interpret the language Klaviyo highlights as meaning the website provides Klaviyo with a list of emails and texts to be sent ads; it is far from a clear notification of the extent of profiling and tracking Klaviyo engages in not just for ads to Every Man Jack website users, but to benefit Klaviyo's own business and for other unclear Every Man Jack marketing purposes besides mere ads.

*No Assent to Shopify Terms*. Klaviyo's argument that Shopify's terms of service establish consumer consent fares even worse. MTD at 14-16. Klaviyo's arguments on this point underscore why the Court should not consider *any* of Klaviyo's untested evidence during this pleading challenge: the argument rests on a screen shot that at best assumes disputed facts and at worst is highly misleading. Specifically, Klaviyo suggests that the checkout page on Every Man Jack's website includes a "Pay now" button that must be clicked to make a purchase, and below that button is language stating that "By continuing, you agree to Shop's Terms of Service and acknowledge the Privacy Policy." MTD at 14-16 (citing ECF No. 18-4 at 3) (underline in original). In other words, Klaviyo contends that—unlike the Every Man Jack privacy policy—this is not a pure browsewrap case when it comes to the Shopify terms.

Klaviyo's brief boldly fails to inform the Court that this language below the "Pay now" button does not appear to all users who make a purchase. Rather, the check-out page includes a

box above the "Pay now" button titled "Remember me" that comes pre-checked to "Save my information for a faster checkout with a Shop account." ECF No. 18-4 at 4. The language about agreeing to Shopify's terms *only* appears below the button if a user elects to keep the box checked; unchecking the box removes the language below the "Pay now" button:[2]




Plaintiff has not alleged that the "remember me" box was checked, nor that if it was clicked by default that he left it checked. Klaviyo offers no evidence—let alone evidence properly subject to judicial notice—that Plaintiff left the box checked, nor evidence that the box came pre-checked

[2] This screen shot and these representations about the functioning and appearance of the website accurately describe the functioning and appearance of the checkout page of Every Man Jack's current website as of the filing of this brief. These representations raise factual questions about whether and how the website has changed. That is Plaintiff's point: Klaviyo's proffered screen shots currently lack a context and developed factual record to test their accuracy and completeness.

at the time Plaintiff checked out. Accordingly, Klaviyo's argument that this is not a browsewrap case as to the Shopify terms fails because it has no factual support regarding Plaintiff's purchase.

Even if the Court proceeded to assume the box was checked and the language in Klaviyo's exhibit appeared to Plaintiff when he clicked the purchase button, there is still no assent to the terms under *Chabolla*. The language below the button: (i) is small, (ii) is in a lighter gray text as opposed to regular black on other parts of the page, (iii) begins with the language "Your info will be saved to a Shop account"; and (iv) only then states "By continuing, you agree . . . ." ECF No. 18-4 at 4. The text is not conspicuous enough to draw attention; even if it were the first sentence would not alert a user that the remaining text indicates clicking a button constitutes agreement to anything; and even for users who nevertheless read all of the text, there is no button to "Continue" so clicking "Pay now" cannot as a matter of law constitute assent. *Chabolla*, 129 F.4th at 1158-59. Klaviyo's reliance on pre-*Berman,* pre-*Oberstein* and pre-*Chabolla* district court case law is not persuasive. MTD at 14-15.

*Shopify Terms Do Not Establish Consent.* Even if the Court assumed Plaintiff assented to the Shopify terms, Klaviyo's argument suffers from a basic logic problem at this stage on this incomplete record: Plaintiff does not allege that Shopify shared consumer data with Klaviyo. The Complaint alleges that Klaviyo tracked Plaintiff through the Every Man Jack website, not through Shopify. ¶¶ 33-39. Shopify's terms necessarily talk about third-parties that *Shopify* shares information with, and does not purport to tell consumers about who Shopify merchants like Every Man Jack share information with. ECF No. 18-9 at 4 ("*Shopify* may provide Personal Data to the following categories of third parties . . ." (emphasis added). A full record may reveal that Shopify was involved in this data collection, but that is beyond the allegations and Plaintiff's current knowledge.

Regardless, Shopify's terms suffer from the same vagueness and incompleteness problems as the Every Man Jack terms discussed above. ECF No. 18-9. The policy does not mention (i) Klaviyo by name, (ii) the collection of search information on a merchant's website nor collection

of URL information, (iii) the extent of Klaviyo's detailed profiling activities designed to overcome and retroactively identify consumers using typical methods to remain anonymous before choosing to provide contact information (i.e., through identity resolution and "anonymous visitor activity backfill"); nor Klaviyo's own use of the data to train its AI model. These facts are simply not reasonably understood by a consumer reading allusions to sharing data about "interactions with Shopify Merchants," products viewed and visited, order history, and the like.

Klaviyo's consent argument fails.

2. Klaviyo Is a Third-Party Eavesdropper.

As set forth above, the Complaint details Klaviyo's liability under Section 631(a) of CIPA for aiding and conspiring with hundreds of thousands of websites such as Every Man Jack to track and intercept Plaintiff's and Class Members' private communications while accessing those websites. Courts routinely sustain allegations under such circumstances. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (finding a violation of 631(a) because "a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("[S]imultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception.")

Klaviyo tries to argue that sharing data with Klaviyo is no different than sharing data with Every Man Jack because Klaviyo essentially provides back-office support and is not really a third party. MTD at 17-18. The court's analysis in *Smith v. YETI Coolers*, LLC, is instructive. The court explained that to determine whether a defendant is a third-party nonparticipant, "courts have been instructed to analyze whether the technology (or actor) behaves more akin to a tape recorder

utilized by the party to the conversation or as an eavesdropper 'pressing up against the door to listen to a conversation.'" 754 F. Supp. 3d at 940 (quoting *Revitch*). " In *Smith*, the court concluded the defendant was a third-party because "[b]ased on Plaintiff's complaint, there are sufficient allegations that [the defendant] does not simply collect consumers' personally identifiable and financial information in order to process payments and facilitate transactions on Defendant's website. Rather, Plaintiff sufficiently alleges that [the defendant] collected Plaintiff's information to monetize and market [their] services to Defendant and other merchants within [the defendant's] network, which is a distinct commercial purpose." *Id.*

The facts here are indistinguishable from *Smith*. As in *Smith*, here Plaintiff alleges that Klaviyo does not simply collect consumer information from a website and deliver ads and consumer analysis for that website. Rather, Klaviyo:  uses consumer data for its own purposes to create its own products and services, including (i) to train its own AI model, ¶¶ 28 30-31, and (ii) to market products leveraging the data collected allowing website to compare their e-commerce store's performance to others in the same industry using data shared with Klaviyo, ¶ 32.

Klaviyo's reliance on the case *Love v. Ladder Fin., Inc.*, No. 23-CV-04234-VC, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) is misplaced. In *Love*, the alleged third-party at issue provided what is known as "session replay" services to websites. Session replay technology essentially records individual users' actions on a website and allows the website to go back and "replay every keystroke and click." *Id.* at *1. The *Love* court concluded that the plaintiffs' theory that the session-replay provider used the data for anything other than letting its website customers replay the session was entirely speculative. *Id.* at *2. Specifically, the plaintiffs relied on language in the session provider's privacy policy stating that it "may" use and share information in an "aggregated and de-identified manner," but—reasoned the court—"[t]here is no coherent story of how or why [the session replay provider] would learn such granular information about users of one if its customers' sites—information that has nothing to do with its alleged service or stated uses of consumer data," and "[m]erely quoting these lines from the policy and then making broad

assertions about use is not enough to state a claim." *Id.*

Here, by contrast, the Complaint alleges a fully coherent story explaining that Klaviyo's entire business model is about analyzing and using the data provided by its partner websites to offer unique products and services such as e-commerce store comparisons within industries, ¶ 32, and to train its own AI model to develop proprietary technology to market to other websites about how best to target customers, ¶ 28. These allegations are not based merely on Klaviyo's privacy policy, but on Klaviyo's own descriptions of its business and its SEC investor filings, ¶ 31. Thus, this case is more like *Smith*, and *Ladder* is distinguishable.

3. Plaintiff Alleges Interception of "Contents."

Klaviyo argues Plaintiff has not alleged the interception of any "contents" of communications he made with Every Man Jack. MTD at 18-20. Klaviyo is incorrect.

Search terms and descriptive URLs are contents of a communication under Section 631(a). *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("[A] user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication."); *St. Aubin v. Carbon Health Techs., Inc.*, No. 4:24-cv-00667-JST, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) ("[D]escriptive URLs that reveal specific information about a user's queries" may reflect the contents of communications under CIPA); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("[s]earch terms constitute 'contents' of a communication."); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'").

Here, Plaintiff has alleged that Klaviyo collects a variety of communication content, including "descriptive URLs" that "reveal product names and other product information." ¶ 15. Plaintiff also alleges that Klaviyo collects the contents of searches entered into the search bar at Every Man Jack's website. ¶ 17. That allegation includes a screenshot showing how Klaviyo

receives a URL containing the contents of what was searched. *Id.* Klaviyo also collects the product name, price, and category of what a user is browsing or purchasing. ¶ 15.Plaintiff further alleges that he used the everymanjack.com website to view and purchase products. ¶¶ 33-34. When Plaintiff did so, "Klaviyo collected his Consumer Browsing Activity which included the URLs, names, and prices of the products he viewed and purchased along with any text he typed into the website's search bar." ¶ 35. As a result, Plaintiff has alleged that Klaviyo collected contents of his communications, including product details, descriptive URLs, and search text.

Klaviyo does not seriously dispute these basic legal premises about what constitutes "content." Rather, Klaviyo's argument boils down to insisting that Plaintiff's allegations are not plausible until he provides an unclear amount of additional granular detail about exactly what he did on the website and exactly what content Klaviyo intercepted. MTD at 19-20. This is wrong because knowing what product Plaintiff purchased will not further assist the Court in determining whether details about that product and URLs describing that product are "content"—they are. In sum, Klaviyo's argument ignores the details of Plaintiff's alleged use of the website to make a purchase and of the website's systemic and uniform interceptions of the specific contents of those communications related to the product purchased, URL's involved, and searches involved. *See James v. Walt Disney Co*., 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *Doe v. Call-On Doc Inc.*, No. 24cv2095-GPC(KSC), 2025 WL 1677632, at *11 (S.D. Cal. Jun. 13, 2025) (accepting allegations of general "types" of information sought when seeking treatment on website and finding "contents" intercepted, without requiring disclosure of the specific symptoms, medications, or surgical history plaintiff conveyed).

The details already alleged about what was intercepted and what Plaintiff did on the website distinguish this case from the cases Klaviyo cites. MTD at 19 (citing, *e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (finding "IP addresses, locations, browser types, and operating systems" are not "content").

**B. Plaintiff Plausibly Alleges a CIPA § 635 Claim.**

Klaviyo's sole argument that Plaintiff fails to state a CIPA § 635 claim is expressly derivative of its argument that Plaintiff failed to allege a CIPA § 631(a) claim: Klaviyo argues a § 635 claim only exists if a predicate § 631(a) violation exists. MTD at 20-21. Accordingly, this argument fails for the reasons just discussed why Plaintiff adequately alleges a § 631(a) claim.

**C. Plaintiff Plausibly Alleges a CIPA § 638.51 Claim.**

CIPA § 638.51 generally forbids any person from installing or using a pen register or trap-and-trace device absent a court order or the user's consent. *See* CIPA §§ 638.51(a), (b)(5). Klaviyo does not contest, and the law is overwhelmingly in Plaintiff's favor, that the tracking tools implemented by Klaviyo here are "pen registers" under the statute. *See, e.g., Shah v. Fandom, Inc.*, 754 F. Supp. 3d 925, 929 (N.D. Cal. 2024) ("third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information"); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (cited by Klaviyo) ("[U]nder the inclusive language of CIPA's definition of a pen register, Plaintiff sufficiently alleges that the Trackers are a 'device or process…'"); *Moody v. C2 Educational Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51."); *Selby, et al., v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025) (Pixels, and similar internet tracking technology, qualify as "pen registers" under CIPA § 638.51(a)).

Instead, Klaviyo argues that a website provider, such as Every Man Jack, falls under the definition of a "communication service provider" and received users' consent such that Plaintiff may not plausibly allege a claim under CIPA§ 638.51. *See* MTD at 21-22. Klaviyo misconstrues Plaintiff's complaint and theory of the case. As a threshold matter, use of the tracking tools by Klaviyo is sufficient to satisfy the statute under the plain language of the statute and interpreting caselaw. *See* CIPA § 638.51 ("… may not install or use …") (emphasis added); *Deivaprakash v.*

*Conde Nast Digital*, 2025 WL 2541952, at *3 (N.D. Cal. Sept. 4, 2025) (finding liability for use of trackers); *In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615, at *2 (N.D. Cal. Aug. 6, 2025) (same for Pixels).

In any event, Plaintiff claims that Klaviyo (an unknown third party to the user in the interaction between a user and the website operator) installed and/or used the tracking tools, which caused Klaviyo to collect Plaintiff's information, including IP Address, geolocation, device information, and other persistent identifiers. ¶¶ 1, 3, 7, 16-22, 30-32, 71, 72. In so doing, Klaviyo – not Every Man Jack, or any other website operator – received this information in addition to "names, email addresses, phone numbers, and other identifiers" and "Consumer Web Activity." ¶¶ 15, 25, 74. The information was received without user's consent. ¶ 74. That information was then used by Klaviyo to identify Plaintiff and Class Members and conduct advertising and marketing activities. ¶¶ 19, 30. Even if the website providers here were considered a "provider of electronic or wire communication services," Klaviyo is not. Moreover, numerous cases have found CIPA § 638.51 violations where a website operator deployed third-party trackers that captured users' identifying information which was shared with unauthorized third parties for profiling and advertising purposes. *See e.g. Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (denying motion to dismiss plaintiffs' CIPA§ 638.51 claims because her "information was sent to third parties, not just [the website operator]"). *Fregosa v. Mashable, Inc.,* 2025 WL 2886399, at *8 (N.D. Cal. Oct. 9, 2025) (upholding claims where website operator "affirmatively embedded third-party trackers that recorded and transmitted users' identifying information to outside entities for profiling and advertising purposes.").

As to the issue of consent, Klaviyo's recycled argument that users consented to the Klaviyo's collection of their private information because they allegedly agreed to Every Man Jack's and Shopify's privacy policies (MTD at 23) fails. Simply put, the consent exception is not available to Klaviyo because Klaviyo doesn't contend to be, and is not, a "provider of electronic or wire communication service." Thus, CIPA § 638.51(b), including the consent exception,

categorically does not apply to Klaviyo. *See Mirmalek*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *12 (N.D. Cal. July 14, 2025).

Even if the consent exception were available, Klaviyo's consent argument fails for the reasons explained above in Section IV.A.1—particularly at the pleading stage. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 44 (S.D.N.Y. 2025) (without further development of the factual record, on a 12(b)(6) motion "the Court cannot conclude that [plaintiff] consented to [defendant's] third-party trackers collecting her data."); *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *4 (C.D. Cal. Feb. 3, 2025) ("[w]hether Defendant's Privacy Policy was sufficient to establish consent is a question of fact that should proceed past the pleading stage.")

**D. If Relevant, Leave to Amend Is Proper**

Klaviyo's argument regarding the Court denying leave to amend because the privacy policies are unchanging is makeweight. *See* MTD at 23.[3] For the reasons discussed above, the privacy policies of Every Man Jack and Shopify have no bearing on the Court's decision because: (1) the Court should not take judicial notice of the content of these policies; (2) consent is not an available defense to Klaviyo for CIPA § 638.51(b); and (3) Klaviyo has failed to show consent as a matter of law given the inherently fact-sensitive nature of the inquiry. Regardless, should the court grant Klaviyo's motion, in whole or in part, the Court should "freely give leave when justice so requires." FRCP 15(a)(2).

Klaviyo's citation to *Zamora v. Solar*, 2016 WL 3512439, at *5 (C.D. Cal. June 27, 2016) does not change the analysis. *Zamora* was a breach of contract case and the court's holding was explicitly that leave would be futile in a breach of contract situation because the contract terms were central to the claim's merits. That is not the case here, where the issue of consent is highly fact sensitive and turns on details not currently in the record.

[3] .

### E. Plaintiff's Request for Injunctive Relief is Proper

Klaviyo argues that because Plaintiff is now aware that Klaviyo is violating CIPA, future violations of CIPA do not confer standing for injunctive relief. *See* MTD at 24. Klaviyo is wrong. First, Plaintiff is at risk of future harm so long as Klaviyo has his data, and Klaviyo's tracking is both widespread and behind-the-scenes so Plaintiff cannot practically know ahead of time whether a website uses Klaviyo's tracking. *E.g.*, ¶¶ 1-7 (hundreds of thousands of websites use Klaviyo's tracking). These allegations, among others, establish a likelihood of continuing harm in the form of "intangible privacy injuries" appropriate for injunctive relief. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 785 (N.D. Cal. 2019).

Second, the Court should reject Klaviyo's arguments because he arguably does not have an adequate remedy at law. *See Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) ("the injury here is an invasion of privacy that can never be fully remedied through damages."). Third and finally, the issue of whether injunctive relief is appropriate should not be adjudicated at the motion to dismiss stage. *See Sinatro v. Barilla Am., Inc.*, 2022 WL 10128276, at *16 (N.D. Cal. Oct. 17, 2022) ("[t]he issue of Plaintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage"). For these reasons, the Court should deny Klaviyo's Motion seeking dismissal of injunctive relief.

## V. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that Klaviyo's Motion to Dismiss be denied. If the Court does not deny Klaviyo's Motion to Dismiss in full, Plaintiff respectfully requests that the Court grant leave to amend.

//

//

//

//

//

Dated: November 4, 2025

Respectfully submitted,

By: */s/ William J. Edelman*

William J. Edelman (SBN: 285177)
**MILBERG, PLLC**
227 West Monroe Street, Suite 2100,
Chicago IL 60606
Telephone: (771) 474-1121
Email: wedelman@milberg.com

Heather M. Lopez (SBN: 317598)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse,
Beverly Hills, CA 90212
Telephone: (865) 247-0080
Email: hlopez@milberg.com

Scott Edelsberg, (CA Bar # 330090)
**EDELSBERG LAW, P.A.**
Scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

*Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of November 2025, I caused a copy of the foregoing to be filed with the Clerk of Court via the Court's electronic filing system, which will send notice of electronic filing to all counsel of record.

*/s/ William J. Edelman*
William J. Edelman