Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Vicki Chou, State Bar No. 248598
vchou@hueston.com
Deeksha Kohli, State Bar No. 333887
dkohli@hueston.com
Chandler Matz, State Bar No. 341562
cmatz@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Defendant
KLAVIYO, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUI NGUYEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KLAVIYO, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-cv-06551-EKL<br><br>**DEFENDANT KLAVIYO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: January 14, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Eumi K. Lee<br>Courtroom: Courtroom 7<br>San Jose Courthouse<br>280 South First Street, 4th Floor<br>San Jose, CA 95113<br><br>Complaint Filed: August 4, 2025<br>Trial Date: None Set |

TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. Plaintiff's Complaint Fails to State a Claim Under CIPA § 631(a) .......... 3

1. Plaintiff Does Not Plausibly Allege His Lack of Consent .......... 4

a. Plaintiff Must Plead Lack of Consent .......... 4

b. Plaintiff Has Not Plausibly Alleged that He Did Not Agree to EMJ's Terms of Service and Privacy Policy .......... 5

c. Plaintiff Has Not Plausibly Alleged that He Did Not Agree to Shopify's Privacy Policy .......... 8

d. Both the EMJ and Shopify Agreements Establish Plaintiff's Consent .......... 9

2. Plaintiff Does Not Allege that Klaviyo is a Third-Party Eavesdropper .......... 10

3. Plaintiff Does Not Allege that Klaviyo Intercepted the Contents of Plaintiff's Communications .......... 11

B. Plaintiff Does Not Have a Private Right of Action Under CIPA § 635 .......... 13

C. Plaintiff's Complaint Fails to State a Claim Under CIPA § 638.51 Because it Does Not Plausibly Allege Plaintiff's Lack of Consent .......... 13

D. The Court Should Dismiss Plaintiff's Claims With Prejudice Because The Policies Establishing Consent Will Not Change .......... 15

E. Plaintiff Cannot Seek Injunctive Relief Because He Now Has Notice of Any Data Collection by Klaviyo .......... 15

III. CONCLUSION .......... 15

TABLE OF AUTHORITIES

Page(s)

Cases

*Aoki v. Gilbert*,
2017 WL 6343925 (E.D. Cal. Dec. 11, 2017) ... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ... 7, 8

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ... 5

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ... 6, 7, 8, 9

Dumas v. Kipp,
90 F.3d 386 (9th Cir. 1996) ... 15

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ... 14

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ... 1, 2, 3, 4, 5, 8

*Graf v. Zynga Game Network, Inc.*,
750 F.3d 1098 (9th Cir. 2014) ... 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 2, 12, 13

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ... 2, 12, 13

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ... 15

*Khalid v. Microsoft Corp.*,
409 F. Supp. 3d 1023 (W.D. Wash. 2019) ... 15

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ... passim

TABLE OF AUTHORITIES (cont.)

Page(s)

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 3, 4, 9

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ........ 2, 10, 11

*Melendres v. Maricopa Cnty.*,
897 F.3d 1217 (9th Cir. 2018) ........ 15

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 1, 14

*Nguyen v. Barnes & Noble,*
763 F.3d 1171 (9th Cir. 2014) ........ 5, 6, 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 7

*Oberstein v. Live Nation Ent., Inc.*,
2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021) ........ 9

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 4, 10

*Reid v. Countrywide Bank, N.A.*,
2013 WL 7801758 (W.D. Wash. Apr. 3, 2013) ........ 8

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 14

*Shull v. Ocwen Loan Servicing, LLC*,
2014 WL 1404877 (S.D. Cal. Apr. 10, 2014) ........ 12

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 4

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 3, 10

*Weiner v. ARS Nat. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012) ........ 4

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 10, 11

TABLE OF AUTHORITIES (cont.)

Page(s)

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 12

Statutes

Cal. Penal Code § 631 ........ passim

Cal. Penal Code § 635 ........ 1, 2, 4, 13

Cal. Penal Code § 638.51 ........ 1, 13, 14

## I. INTRODUCTION

Despite Plaintiff's efforts to rely on inapposite case law, Plaintiff's Opposition cannot escape an unavoidable truth: a plaintiff cannot state a claim under the California Invasion of Privacy Act without plausibly alleging a lack of consent. Here, Plaintiff repeatedly consented to the collection of the information of which Plaintiff now complains. Courts routinely dismiss complaints founded, as here, on such allegations supported only by speculation and conclusory assertions. Plaintiff's failure to allege non-consent, particularly in light of judicially noticeable privacy policies expressly providing consent to his data collection, is dispositive.

Klaviyo is an autonomous customer relationship management system that unifies end-customer data and communication channels into a single, streamlined platform. Klaviyo and its suite of tools—including those which enable the direct collection of end-user data—empower its customers to not only improve business outcomes and drive revenue, but also enhance the end-user experience overall by enabling them to better understand their own customers, personalize their customer interactions, and optimize their site and marketing performance for both meaning and value. But Klaviyo's customers can only use Klaviyo's tracking tools for end-user data collection on the representation that *they* will obtain all required user consents for such collection. In other words, Klaviyo "collects" or receives any given brand's end-user data only to the extent that such data is being passed to Klaviyo, with consent, by that brand to be processed on its own behalf and at its own direction. For this reason, and because the Opposition fails to present any valid argument to the contrary, Plaintiff's concocted theory of liability fails.

At the outset, Plaintiff has failed to adequately plead his lack of consent. Plaintiff brings claims under CIPA §§ 631(a), 635, and 638.51. But to state a claim under §§ 631(a) or 638.51, Plaintiff must plausibly allege that he did not consent to Klaviyo collecting his data. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 113 (N.D. Cal. 2015); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024). He has not done so. He makes the bare allegation that he "did not consent" but provides no supporting facts. Dkt. 1 (Compl.) at 39. This unsupported legal conclusion is not sufficient to plead lack of consent under CIPA, particularly given judicially noticeable facts showing that any data collection was conducted pursuant to his consent to at least two different

privacy policies, either one of which would be sufficient for the Court to dismiss this action entirely. *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025) ("legal conclusion" insufficient to allege lack of consent where website policies disclosed data collection).

Even if Plaintiff had sufficiently pled lack of consent, his claim under § 631(a) would still fail. Plaintiff fails to plead two other required elements under § 631(a): (1) that Klaviyo is a third-party eavesdropper because it uses the data it collects for its own purposes; or (2) that it intercepted the *contents* his communications. As to the first element, Plaintiff only alleges that Klaviyo uses aggregated and anonymized data derived from collected data to improve its services, but this is insufficient to plead that Klaviyo is a third-party eavesdropper. *See Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (allegation that defendant used collected data in "an aggregated and de-identified manner" insufficient to allege defendant was a third-party eavesdropper). As to the second element, the only content Plaintiff alleges Klaviyo collects is a user's search terms, but he fails to allege that he made any search on www.everymanjack.com. Thus, Plaintiff has not alleged Klaviyo intercepted the contents of any of his communications. *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (dismissing § 631(a) claim where plaintiff failed to allege any communications she made that she believed defendant intercepted). Plaintiff's failure to plead his § 631(a) claim is also fatal to his claim under § 635, which depends on a successful statement of a claim under § 631(a). *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

Plaintiff's Opposition fails to rebut any of Klaviyo's arguments.

*First*, Plaintiff's Opposition attempts to improperly shift the burden on consent, arguing incorrectly (and without support) that Klaviyo has the burden to show consent. But the law is clear: Plaintiff has the burden to plead facts plausibly alleging that he did not consent to Klaviyo collecting his data. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 113 (N.D. Cal. 2015). Plaintiff's reliance on the wrong legal standard alone is sufficient for the Court to reject his argument. *See, e.g.*, *Aoki v. Gilbert*, 2017 WL 6343925, at *1 (E.D. Cal. Dec. 11, 2017).

*Second*, Plaintiff's Opposition attempts to challenge the two applicable privacy policies at issue here: Every Man Jack's and Shopify's. But each of the policies, independently, are similar to

policies that Courts have considered sufficient to dismiss CIPA claims, and Plaintiff's notice of and assent to either of these policies defeats his claim. Plaintiff's arguments about the privacy policies' lack of specific reference to Klaviyo, Opp. at 6-7, 9-10, also have no traction: privacy policies do not need to include such granular disclosures, as long as they disclose that "data connected to the use of the site could be collected and shared" with third parties. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025). And the policies Plaintiff agreed to in this matter did, in fact, make such disclosures. *See* Mot. at 11-16.

Plaintiff's arguments on the third-party eavesdropper and interception of contents elements fare no better. Plaintiff argues Klaviyo is a third-party eavesdropper under *Smith v. YETI Coolers, LLC*. But in that case, the plaintiff alleged the defendant collected consumer data and then sold access to the user data to other merchants. 754 F. Supp. 3d 933, 941-42 (N.D. Cal. 2024). Plaintiff has not made any similar allegations. Plaintiff also fails to rebut that his Complaint does not allege he made the type of communication he alleges Klaviyo collected.

Plaintiff's Complaint should be dismissed in its entirety, with prejudice, because the policies establishing consent will not change. At a minimum, Plaintiff's request for injunctive relief must be dismissed with prejudice because he is now on notice of any alleged problematic data collection practices should he continue use of the EMJ website.

## II. ARGUMENT

### A. Plaintiff's Complaint Fails to State a Claim Under CIPA § 631(a)

Plaintiff's Opposition has three major flaws. First, it applies the wrong legal standard by attempting to improperly shift the burden of proof on consent to Klaviyo, but the law is clear: it is Plaintiff's burden to allege his lack of consent. *Garcia*, 78 F. Supp. 3d at 113. Second, the Opposition mischaracterizes the privacy policies of the website Plaintiff visited as "browsewrap" even though the policies on EMJ's site were presented to Plaintiff via multiple pop-ups and on the checkout page Plaintiff interacted with when he made a purchase, making them decidedly not browsewrap. *LinkedIn Corp.*, 2025 WL 2899514 at *9. Finally, Plaintiff argues that the privacy policies at issue needed to specifically disclose Klaviyo and all of its services, but fails to distinguish relevant caselaw that already considered and rejected this argument. *Lakes*, 777 F. Supp. 3d at 1056.

Even if Plaintiff's consent arguments had merit (and they do not), Plaintiff's § 631(a) claim (and thus his § 635 claim) still fails because he does not adequately allege that Klaviyo was a third-party eavesdropper or that Klaviyo read the contents of Plaintiff's communications.

1. Plaintiff Does Not Plausibly Allege His Lack of Consent

Plaintiff's Complaint fails to plead lack of consent because both EMJ and Shopify's Privacy Policies included Plaintiff's consent to the collection and sharing of his data, and Plaintiff's allegations that he used the website and made a purchase are facts showing he assented to the agreements. Mot. at 9-16. Either policy provides an independent basis for Plaintiff's consent. *Id.* Plaintiff's Opposition fails to show otherwise.

*a. Plaintiff Must Plead Lack of Consent*

It is well established that "lack of consent is an express element of a claim" under CIPA, and the plaintiff must allege it in their complaint. *Garcia*, 78 F. Supp. 3d at 1136; *see also*, *LinkedIn Corp.*, 2025 WL 2899514 at *11 n.9 ("[C]onsent is an element in each of [plaintiff's] claims," including claims under CIPA); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021) (dismissing CIPA claim for failing to plead lack of consent); *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) ("Plaintiff must prove . . . all parties did not consent" to succeed on CIPA claim); *see also* Cal. Penal Code § 631 (prohibiting "unauthorized" wiretapping "**without the consent** of all parties" (emphasis added)). A conclusory allegation that plaintiff did not consent fails to satisfy this burden where "express provisions of [a policy]" that is subject to judicial notice would contradict the allegation. *Garcia*, 78 F. Supp. 3d at 1137. In such a case, to plead lack of consent, a plaintiff would need to "provide additional information about what they knew of the policy, when they knew it, and whether that information had any effect on their decisions related to the site," *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *2 (N.D. Cal. Oct. 27, 2025), such as facts to show that the plaintiff could have used the website "without accepting the terms" of the policy. *LinkedIn Corp.*, 2025 WL 2899514 at *10 (conclusion that plaintiff did not consent insufficient where plaintiff did not allege facts showing "users can use the website without accepting the terms" of the policy). Here, Plaintiff has failed to do so.

Plaintiff pleads the bare legal conclusion that he "did not give Klaviyo consent." Compl. at

¶ 39. But Plaintiff fails to plead any *facts* about EMJ or Shopify's privacy policies, including what he knew about the policies, when he knew it, or facts showing he could have used EMJ's site without accepting the terms of the policies.[1] Mot. at 9-18. Plaintiff's conclusory allegation does not satisfy his burden to plausibly allege lack of consent. *Garcia*, 78 F. Supp. 3d at 1137 (dismissing CIPA claim because "express provisions of the Privacy Policy and TOS" "contradict[ed] [plaintiff's] bare allegation that he did not consent").

Plaintiff tries to invert the burden, claiming that Klaviyo must establish consent as a matter of law. Opp. at 4. But his sole case does not support his proposed legal standard. *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), did not consider whether a CIPA plaintiff must plead lack of consent. Instead, *Calhoun* reviewed a grant of summary judgment for the defendant on six claims, including common law tort and contract claims; out of the six claims at issue, only one was under CIPA claims. *See id.* at 1147. The *Calhoun* court treated consent generally as an affirmative defense in the case—not specific to CIPA—because the majority of the plaintiff's claims there did not include lack of consent as an element. *Id.* at 1146. But here, all of Plaintiff's claims are under CIPA, all include lack of consent as an element, and Plaintiff bears the burden to plausibly allege lack of consent. The Court should reject Plaintiff's argument because it is based on an incorrect legal standard and it directly contradicts the plain language of the statute, which courts have consistently held to mean that a plaintiff must affirmatively plead lack of consent in order to successfully bring a CIPA claim. *Garcia*, 78 F. Supp. 3d at 113. Consent is not merely an affirmative defense.

*b. Plaintiff Has Not Plausibly Alleged that He Did Not Agree to EMJ's Terms of Service and Privacy Policy*

Plaintiff argues, incorrectly, that EMJ's Terms of Service and Privacy Policy could not establish Plaintiff's consent because they are "pure browsewrap" agreements. Opp. at 5-6. But under Ninth Circuit law, an agreement is only a pure browsewrap agreement where a user could conceivably "continue to use the website or its services without visiting the page hosting the browsewrap agreement or ***even knowing that such a webpage exists***." *Nguyen*, 763 F.3d at 1176

[1] For the reasons explained in Klaviyo's Request for Judicial Notice and reply in support thereof, the EMJ and Shopify privacy policies are both properly subject to judicial notice.

(emphasis added). Courts are understandably reluctant to enforce pure browsewrap agreements. But EMJ's agreements are not pure browsewrap, because if Plaintiff used EMJ's website he could not have avoided knowing that the Privacy Policy exists. After all, far from keeping the Privacy Policy "buried at the bottom of the page or tucked away in obscure corners of the website," the homepage of EMJ's site included a prominent cookie consent banner that stated "This website uses cookies to ensure you get the best experience on our website," link[ed] to the Privacy Policy, and contain[ed] an "Accept" button. *Nguyen*, 763 F.3d at 1177; Mot. at 5. And the banner even persisted on each subsequent page of the site after a user clicked away from the homepage. *Id.*

Courts have found that an agreement is "somewhere in between a browsewrap and a modified clickwrap agreement," not pure browsewrap, where a pop-up like EMJ's cookie consent banner provides notice of the agreement. *LinkedIn Corp.*, 2025 WL 2899514 at *9. For example, in *LinkedIn*, defendant's homepage had a cookie consent banner with an "Accept" button and a link to a Cookie Policy. *Id.* This is similar to EMJ's banner, which also had a link to EMJ's Privacy Policy and an "Accept" button. The *LinkedIn* court reasoned that the Cookie Policy was not a pure browsewrap agreement because the cookie consent banner provided notice and the banner contained a prompt to the user to manifest assent via an "Accept" button. *Id.* The court noted that the "Accept" button notified a user that an agreement was being presented, even if the user did not click the button.[2] *Id.* Finding that the cookie banner could provide constructive notice of the policies at issue, the court dismissed the plaintiff's CIPA claims for failing to plead any facts alleging that the banner did not provide such notice. *Id.* Here, as in *LinkedIn*, EMJ's cookie consent banner provided conspicuous notice of the Privacy Policy, and Plaintiff has not alleged any facts to the contrary. *See* Mot. at 16.

Plaintiff argues the Court should ignore decisions like *LinkedIn* and instead follow *Chabolla*, *Oberstein*, and *Berman*. Opp. at 6-7. But those cases are inapposite because each of them involved the defendants' attempts to compel arbitration, where defendants bore the burden of showing that the plaintiffs had consented to arbitration as a matter of law. *See Chabolla v. ClassPass Inc.*, 129 F.4th

[2] While not necessary to decide this motion, it is worth noting that if Klaviyo collected Plaintiff's data, he must have clicked the "Accept" button on EMJ's cookie consent banner. Klaviyo requires its customers to configure their websites to only collect user data if the user accepts cookies.

1147, 1153 (9th Cir. 2025) ("The party seeking to compel arbitration bears the burden of proving" consent.); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509 (9th Cir. 2023) (addressing motion to compel arbitration); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (same). The procedural context is materially different than the one at issue here, where ***Plaintiff*** has the burden to allege facts showing he did not have constructive notice of the EMJ agreements. *LinkedIn Corp.*, 2025 WL 2899514 at *10 (dismissing complaint for failure to plead lack of consent in absence of facts alleging the site "[did] not provide constructive notice of its privacy policy"). Plaintiff failed to do so; tellingly, he does not cite his Complaint even once in his argument about his purported lack of assent to the EMJ agreements.

Even if the decisions in *Chabolla, Oberstein*, and *Berman* were applicable, they support Klaviyo's arguments, not Plaintiff's. In *Oberstein*, the Ninth Circuit found a webpage provided constructive notice of agreements because those notices appeared on multiple pages and in close proximity to buttons the user had to interact with in order to navigate the webpage. *Oberstein*, 60 F.4th at 515. Here, like in *Oberstein*, EMJ both presented Plaintiff with a cookie consent banner and privacy policy notice on each page of the EMJ website, and also made a disclosure directly under the "Pay now" button Plaintiff must have interacted with to make the purchase alleged in the Complaint. *See* Mot. at 5-6. By contrast, in *Chabolla* and *Berman* the agreements at issue were not presented on any pop-ups and, in the case of *Chabolla* in particular, were "on the periphery of where a user . . . would be looking." *See Chabolla*, 129 F.4th at 1157; *Berman*, 30 F.4th at 857.

Plaintiff argues his continued use of EMJ's site cannot establish assent to the EMJ agreements under Ninth Circuit law. Opp. at 6. Plaintiff is incorrect. As the Ninth Circuit explained in *Nguyen v. Barnes & Noble*, continued use of a website can establish assent to an agreement so long as "a reasonably prudent user would have inquiry notice" of the terms of the agreement. 763 F.3d 1171, 1177 (9th Cir. 2014); *LinkedIn Corp.*, 2025 WL 2899514 at *9 (citing *Nguyen* and dismissing CIPA claim where user manifested assent "[b]y continuing to use [the] site."). None of the cases Plaintiff cites overturned *Nguyen*. As explained above, EMJ's website provided reasonably conspicuous notice of its agreements, and a reasonably prudent user would have inquiry notice of the agreements. *See* Mot. at 11-13. Plaintiff's continued use of EMJ's site manifested his assent to the agreements.

Plaintiff argues that after the decisions in *Berman*, *Oberstein*, and *Chabolla*, district courts in the Ninth Circuit no longer allow continued use of a website to show manifestation of assent. Not so. For example, just months ago in *LinkedIn*, the court dismissed CIPA claims based on agreements that a user manifested their assent to "by continuing to use the website." 2025 WL 2899514 at *10. Notably, the *LinkedIn* court came to that conclusion while citing both *Berman* and *Oberstein*. *Id.* at *8-*9. The *LinkedIn* decision is more recent than any district court case cited in Plaintiff's Opposition and directly contradicts his claim that "recent district court decisions applying" these cases have held that continued use of a website cannot manifest assent. Opp. at 6.

c. *Plaintiff Has Not Plausibly Alleged that He Did Not Agree to Shopify's Privacy Policy*

Plaintiff argues he ***could*** have unchecked a box that included his acknowledgement of Shopify's Privacy Policy and Klaviyo must prove he left the box checked to establish consent via the Shopify policy. Opp. at 7-8. But the burden is on Plaintiff to plausibly allege his lack of consent. *Garcia*, 78 F. Supp. 3d at 113. Plaintiff concedes the box comes pre-checked, *i.e.*, by default, a user agrees to the policy by making a purchase. *Id.* And Plaintiff's Complaint does *not* allege that he unchecked the box. "Plaintiff[] ha[s] not pled any facts to support this theory" that he could have unchecked the box, and the "mere assertion that it could be true is not sufficient to survive a motion to dismiss." *Reid v. Countrywide Bank, N.A.*, 2013 WL 7801758, at *4 (W.D. Wash. Apr. 3, 2013).

Plaintiff also argues that even if he did leave the box checked, the *Chabolla* decision requires the Court to find that EMJ's checkout page did not provide conspicuous notice of the Shopify Privacy Policy. Opp. at 8-9. But as explained above, *Chabolla* is inapposite because there, the defendant had the burden to prove consent, whereas here the burden is on Plaintiff to plead lack of consent. He has not done so; Plaintiff does not cite his Complaint once in his argument regarding his purported lack of assent to the Shopify Privacy Policy. Opp. at 7-9.

Even if the *Chabolla* opinion were applicable, the notice of the Shopify Privacy Policy on EMJ's site is more conspicuous than the one from *Chabolla*. The notice at issue in *Chabolla* was on a part of the website "on the periphery of where a user intending to use [the site] would be looking." *Chabolla*, 129 F.4th at 1157. By contrast, EMJ's notice was directly below the "Pay now" button

that Plaintiff had to click to place an order. Mot. at 5-6. The EMJ site's notice of the Shopify Privacy Policy is like the one in *Oberstein*, which the Ninth Circuit found was reasonably conspicuous. *See Oberstein v. Live Nation Ent., Inc.,* 2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021). The *Chabolla* court distinguished *Oberstein* on these exact grounds. *Chabolla*, 129 F4th at 1157.

Plaintiff also argues that there could be no assent where the button to continue was labeled "Pay Now" rather than "Continue" because the language in the notice advised that "By continuing," he agreed to the policy. Opp. at 9. *Oberstein* directly refutes Plaintiff's argument. In *Oberstein*, the notice at issue stated that "By continuing" a user agreed to the Terms of Use and Privacy Policy. *Oberstein*, 2021 WL 4772885 at *2. But the button a user had to click to continue was labeled "Sign Up." *Id.* The notice in *Oberstein* also had a similar font size and color as the notice on EMJ's checkout page. *Id.* Nonetheless, the district court in *Oberstein* found and the Ninth Circuit affirmed that users manifested their assent by clicking the "Sign Up" button. *Id.* Here, like *Oberstein*, it is immaterial that the notice on the checkout page read "By continuing" and the button was labeled "Pay now." By clicking the button, Plaintiff "continued" and manifested his assent.

*d. Both the EMJ and Shopify Agreements Establish Plaintiff's Consent*

Plaintiff argues that to establish his consent, the EMJ and Shopify policies needed to explicitly identify Klaviyo and its services. Opp. at 6-7, 9-10. Plaintiff cites no caselaw supporting his position. Nor could he, given that courts in this district have already considered and rejected Plaintiff's argument. For example, in *Lakes v. Ubisoft, Inc.*, the plaintiff argued that a privacy policy did not establish consent to the collection of specific identifiers from his Facebook profile by Meta because the policy did not "explicitly notif[y]" users that the exact information at issue was being collected by Meta. 777 F. Supp. 3d at 1055. The *Lakes* court rejected this argument and dismissed claims under CIPA, finding that the agreement's disclosure that "cookie identifiers and other similar data connected to the use of the site could be collected and shared" with third parties established plaintiff's consent. *Id.* at 1056. The *Lakes* court specifically noted that "a more granular disclosure" of the specific data collected and the specific third party to whom data would be disclosed was not required. *Id.* at 1057. The Court should reject Plaintiff's argument, just as the *Lakes* court did. *See also LinkedIn Corp.*, 2025 WL 2899514 at *11 (policy's disclosure that website may disclose user

personal information "to a third party for a business purpose" sufficient to establish plaintiff consented to website collecting data and sharing it with LinkedIn).

Finally, Plaintiff argues that the Shopify agreements cannot establish Plaintiff's consent to collection of his data because the Shopify agreements state who Shopify, not EMJ, may share information with. Opp. at 9. But the relevant question is not whether Klaviyo collected Plaintiff's information by way of Shopify or EMJ -- it is whether Plaintiff consented to data regarding his interactions with EMJ's site being collected and shared with third party service providers like Klaviyo. And he did. The Shopify Privacy Policy allows Shopify to collect data regarding how Plaintiff "interact[ed] with Shopify Merchants," including EMJ's site, and to share that data with "[m]arketing, [a]dvertising, and [a]nalytics [p]artners," like Klaviyo. Mot. at 15; Ex. H at 5. Indeed, both the EMJ and Shopify Privacy Policy disclosed collection of the same categories of information that Plaintiff alleges Klaviyo collected. *See* Mot. at 13-16.

"Plaintiff[] ha[s] failed to allege that [he] did not consent to the collection and disclosure of [his data], dooming" his claim under CIPA § 631(a). *Perez*, 2025 WL 3085786 at *3.

2. <u>Plaintiff Does Not Allege that Klaviyo is a Third-Party Eavesdropper</u>

Even if Plaintiff could establish lack of consent, his § 631(a) claim still fails because he does not plausibly allege that Klaviyo is a third-party eavesdropper. Mot. at 17-20. A defendant must be capable of using the data it collects for its own purpose to be a third-party eavesdropper. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023). Allegations like Plaintiff's that a defendant uses aggregated data derived from collected data, (Compl. at ¶¶ 30-32), are not sufficient to allege a defendant is a third-party eavesdropper. *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (allegation that defendant "may use and share information in an aggregated and de-identified manner" failed to allege third-party eavesdropper).

Plaintiff relies on *Smith v. YETI Coolers, LLC* for support here. Opp. at 10-11. But the allegations in Plaintiff's Complaint are entirely different from those at issue in *Smith*. In *Smith*, the plaintiff alleged a defendant collected consumer data and then sold access to the data to other merchants to help identify potentially fraudulent transactions. 754 F. Supp. 3d 933, 941-42 (N.D. Cal. 2024). But here, there are no allegations that Klaviyo sells access to the data collected from

EMJ's site to other customers. Plaintiff only alleges that Klaviyo uses "aggregated data" that is derived from collected data and "does not identify . . . any natural persons" for service improvement and marketing. Compl. at ¶¶ 30-32. Thus, *Smith* does not support Plaintiff's argument that his allegations are sufficient for a third-party eavesdropper finding.

Plaintiff's allegations are much more like those in *Love v. Ladder Fin., Inc.*, where the court found the defendant was not a third-party eavesdropper. In *Love,* the complaint also alleged that the defendant used data "in an aggregated and de-identified manner . . . for research, analysis, modeling, marketing, and improvement of [its] services." 2024 WL 2104497 at *2. Here, Plaintiff makes the same allegations: that Klaviyo may use "aggregated data that does not identify . . . any natural person" for "services improvement, services and product development, research and marketing." Compl. at ¶ 30. And in *Love*, these allegations failed to establish that the defendant was a third-party eavesdropper, in part because there was "no coherent story of how or why" the defendant would use "granular information about users of one of its customers' sites." *Id.* Here, Plaintiff alleges that Klaviyo collected information regarding (1) the products he viewed, (2) text he typed into the search bar on EMJ's website, and (3) his contact information. Compl. at ¶¶ 33-39. But the Complaint suffers the same deficiency as the one in *Love*: it does not allege any coherent story about how Klaviyo would or could ever use such granular information about Plaintiff or his particular interactions with EMJ's site to improve or market its services.

Plaintiff argues *Love* is distinguishable because the data at issue in *Love* was session replay data that recorded user's keystrokes and clicks, which is different from the data Plaintiff alleges Klaviyo collected. Opp. at 11. But this is beside the point: courts look at how a defendant may use data, not at the type of data collected, when determining whether a defendant is a third-party eavesdropper. *See, e.g.*, *Yockey*, 688 F. Supp. 3d at 972. Because Plaintiff's allegations about how Klaviyo uses collected data are the same as those in *Love*, they are also insufficient to allege that Klaviyo is a third-party eavesdropper.

3. <u>Plaintiff Does Not Allege that Klaviyo Intercepted the Contents of Plaintiff's Communications</u>

To state a claim under § 631(a), Plaintiff must also allege that Klaviyo intercepted the

contents of a communication. "Contents" of a communication "does not include record information regarding the characteristics of the message," like routing information. *Graf v. Zynga Game Network, Inc.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiff's failure to plead this element is an independent basis to dismiss his claim.

*First*, Plaintiff does not address Klaviyo's argument that Plaintiff cannot base his claim on the alleged interception of both content and non-content information. Plaintiff cannot "predicate [his] claim in part on information . . . that is not content," even if he alleges Klaviyo collected "other website interactions [that] are content." *Graham*, 533 F. Supp. 3d at 833. Plaintiff does not contest this point. Nor does he contest that many of the pieces of information he alleges Klaviyo collected, including pages viewed and shipping and billing information, are non-content information. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) ("pages viewed" and "shipping and billing information" are not "message content."). By failing to address these arguments, Plaintiff concedes them. *See Shull v. Ocwen Loan Servicing, LLC*, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) (dismissing claims where Plaintiff "fail[ed] to respond to the arguments raised by Defendant on the[] claims"). Plaintiff's § 631(a) claim should be dismissed because it is predicated on the collection of indisputably non-content information.

*Second*, Plaintiff mischaracterizes Klaviyo's argument as demanding "an unclear amount of additional granular detail about exactly . . . what content Klaviyo intercepted." Opp. at 13.[3] But this is inaccurate. The Complaint fails not for lack of specificity about the exact content, but because Plaintiff does not allege that he ever communicated any content he submitted to EMJ's search function that Klaviyo could have intercepted in the first place. As explained in Klaviyo's Motion, it is not sufficient for Plaintiff to allege that Klaviyo generally collects categories of information; he must allege *he* made substantive communications that he believes Klaviyo intercepted. *Heiting*, 709 F. Supp. 3d at 1018. Thus, in the case of search terms, Plaintiff must allege that he actually entered search terms on the site and that they were collected. It is not enough for Plaintiff to simply allege

[3] Plaintiff's argument implies that he cannot plead more specifics about what he did on EMJ's site, which strains credulity. Plaintiff knows exactly what he did on the site and it would be trivial for him to include those facts in his Complaint.

that Klaviyo generally collects search terms from EMJ's site. *See id.* (allegations that defendant generally collected category of information were insufficient, absent allegations that plaintiff provided such information to defendant). Plaintiff alleges Klaviyo collects search terms users enter on EMJ's site, but does not allege that he input any search terms. Compl. at ¶ 35. Thus, Plaintiff's allegations do not plausibly allege that Klaviyo collected the contents of any search by Plaintiff. Plaintiff's failure to allege he made a search is also a failure to allege any substantive communications Klaviyo intercepted because the other categories of information Klaviyo allegedly collected are non-content. *See* Mot. at 19 (explaining that URLs, pages and products viewed, and shipping and billing information are non-content). "Therefore, Plaintiff has failed to allege that [Klaviyo] eavesdropped on protected contents under [§] 631(a)." *Heiting*, 709 F. Supp. 3d at 1018.

**B. Plaintiff Does Not Have a Private Right of Action Under CIPA § 635**

Plaintiff's claim under § 635 only survives if he can allege a viable § 631(a) claim. *Graham*, 533 F. Supp. 3d at 835. He does not for the reasons explained above, and his § 635 claim should be dismissed.

**C. Plaintiff's Complaint Fails to State a Claim Under CIPA § 638.51 Because it Does Not Plausibly Allege Plaintiff's Lack of Consent**

Plaintiff does not state a claim under CIPA § 638.51 because EMJ is a provider of an electronic communication service and Plaintiff consented to EMJ's collection of his data. Mot. at 21-23. Under CIPA § 638.51(b)(5), an electronic communication service provider may use a pen register or trap and trace device with the consent of the user. As explained above, Plaintiff consented to EMJ collecting his data. Mot. at 9-16. Plaintiff does not contest that EMJ is an electronic communication service provider. Instead, Plaintiff argues that *Klaviyo* is not an electronic communication service provider and thus cannot avail itself of the protections of § 638.51(b)(5) when collecting user information. Plaintiff's argument ignores the actual allegations of his Complaint which plead that EMJ was the entity collecting user information, albeit with Klaviyo's tools.

Plaintiff alleges that he visited a single website: www.everymanjack.com. Compl. ¶ 33. Plaintiff also alleges that Klaviyo's Tracking Tools were "embedded" on the website. *Id.* at ¶ 35. Plaintiff does not allege that Klaviyo surreptitiously embedded its tools on EMJ's site. He also does

not allege in any way Klaviyo's tools could have been installed on his browser other than from Plaintiff visiting EMJ's site. The only reasonable inferences from Plaintiff's allegations are (1) that EMJ used Klaviyo's tools by embedding them on its website, and (2) the Tracking Tools were allegedly installed on Plaintiff's browser from EMJ's site. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (court ruling on 12(b)(6) motion should "draw on its . . . common sense"). This reading is confirmed by Plaintiff's Opposition, where he states plainly that "the EMJ Website"—***not*** Klaviyo—"used Klaviyo's tracking technology." Opp. at 3. Thus, contrary to Plaintiff's Opposition, his Complaint does allege that EMJ used the alleged Tracking Tools. Because Plaintiff effectively concedes that EMJ is an electronic communication service provider and pled that EMJ used Klaviyo's tools, § 638.51(b)(5) applies.

Plaintiff's Opposition argues it must have been Klaviyo, not EMJ, who used the alleged Tracking Tools because Klaviyo received Plaintiff's information. Opp at 15. But to the extent Klaviyo received any of Plaintiff's information, that necessarily occurred via EMJ's use of Klaviyo's tools. Compl. at ¶¶ 33-35. Plaintiff's allegation that Klaviyo received his data is consistent with his allegations that EMJ used Klaviyo's Tracking Tools.

The cases Plaintiff cites do not compel a different result. In one case, the defendant did not raise the plaintiff's failure to plead lack of consent, *see Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), and in the other, the defendant did not identify any agreement showing consent, *see Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025). In contrast, Klaviyo has both expressly raised Plaintiff's failure to plead lack of consent and also identified multiple agreements in which Plaintiff consented to data collection. *See* § III.A.1, *supra*.

Finally, Plaintiff claims Klaviyo's consent arguments fail for the same reasons he argued with respect to his § 631(a) claim. Opp. at 16. But, as explained above, Plaintiff's consent arguments are premised on an incorrect legal standard and Plaintiff has the burden to plead lack of consent. *See Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (noting that for claims under CIPA § 638.51, plaintiff had burden to allege "that he did not consent."). For the reasons explained in § III.A.1, *supra*, Plaintiff has not plausibly alleged his lack of consent.

**D. The Court Should Dismiss Plaintiff's Claims With Prejudice Because The**

**Policies Establishing Consent Will Not Change**

As explained in Klaviyo's Motion, any amendment would be futile because all of Plaintiff's claims are barred by the terms of the EMJ and Shopify agreements. Mot. at 23. Plaintiff argues cases finding that amendment would be futile based on contract language only do so where "the contract terms were central to the claim's merits." Opp. at 16. But those agreements *are* central to the merits of Plaintiff's claims because Plaintiff's consent to the alleged data collection via the EMJ and Shopify agreements defeats his claims. Thus, any amendment by Plaintiff would be futile, and dismissal should be with prejudice. *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) (*citing* Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996)).

**E. Plaintiff Cannot Seek Injunctive Relief Because He Now Has Notice of Any Data Collection by Klaviyo**

Plaintiff does not have standing to seek injunctive relief, because he "now has notice of [Klaviyo's]" alleged data collection, and "[Plaintiff's] use [of EMJ's site] would constitute consent." *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 952 (S.D. Cal. 2024). Plaintiff does not cite a single case finding that a CIPA plaintiff has standing to seek an injunction. Opp. at 17.

Plaintiff argues that even if he has notice of Klaviyo's alleged data collection on www.everymanjack.com, he still faces future injuries from (1) Klaviyo's alleged possession of his data and (2) alleged use of Klaviyo's tools on other sites. Opp. at 17. Plaintiff does not cite any authority granting injunctive relief based on these harms. Further, Plaintiff could not receive injunctive relief to address these injuries because injunctive relief must be tailored to remedy the specific harm alleged. *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018). The only harm Plaintiff alleges is the interception of his data from www.everymanjack.com. Compl. at ¶¶ 33-39. An injunction addressing Klaviyo's possession of Plaintiff's data or use of Klaviyo's tools on sites other than www.everymanjack.com would not be tailored to Plaintiff's alleged harm.

## III. CONCLUSION

Plaintiff consented to the very data collection which he now claims supports his Complaint. Like other courts in this circuit addressing similar claims on similar allegations, this Court should grant the motion to dismiss with prejudice.

Dated: November 20, 2025

HUESTON HENNIGAN LLP

By: ______________________________
Vicki Chou
Moez M. Kaba
Deeksha Kohli
Chandler Matz
*Attorneys for Defendant*
*KLAVIYO, Inc.*